Per Cur.

Ret the will and probate be read.
*87 This having been done by the defendants’ counsel, and there appearing to be a devise therein of the lands in controversy to the defendants, they would proceed no further. They contended that they were not bound to call any witnesses, and that the evidence by them adduced was sufficient and conclusive as to the matter in dispute. They urged that the words of the act of assembly of 4th Annas, passed in 1705 (old ed. p. 14) expressly direct, that wills in writing proved by *Qcr two or more crc * dible witnesses within this cotnmon-00J wealth, or, in the Chancery of England, and the bill, answer and depositions transmitted hither under the seal of the court, or in the Hustings or Mayor’s Court in Rondon, or in some manor court, or before such as have or shall have power in England or elsewhere, to take probate of wills and grant letters of administration, and the copy of the will and the probate thereof annexed, shall be good and available in law as well for the conveyance of the lands thereby devised as the goods and chattels therein bequeathed; that the copies of such wills shall be deemed matter of record, and shall be good evidence to prove the gift or devise thereby made. The judgment of every court having jurisdiction over a subject matter, is in itself conclusive proof of the fact, and carries with it absolute verity. It could never be inteuded by the legislature, that a will proved in England by two witnesses, according to the act, should be full and complete evidence, and that a will proved here should be insufficient without the production of the witnesses at the trial. The evident meaning of the act of assembly passed 28th February 1780, erecting a High Court of ‘Errors and Appeals, was, that after a verdict establishing the validity of a will on an issue sent by the register into the Court of Common Pleas, the said facts should not be re-examined on an appeal or otherwise. And so of the 18th section of the act of last sessions passed 13th April 1791.
On the part of the plaintiff, it was argued that the Common Raw Courts had an exclusive jurisdiction to try the issue of devisavit sive non, both in England and this state. The probate of a will is undeniable evidence as to goods and chattels, but not as to lands. 1 Rd. Rayrn. 262, 731, 735. Every several devisee must make out liis title in a new cause. 3 Cro. 396. Probate of a will is no evidence as to real estate. 2 Stra. 961. The act of assembly of 10th Annse (old ed. p. 50) restrains the powers of the register-general and his deputies to all such judicial acts, as do or shall belong, or ought of right to be done by any persons having power by law to take probate of wills and grant administration; and the general words of the act of 4th Annse must be considered as subject-to this restriction. The Spiritual Courts in England have the sole power over testaments of personal estate, and chancery cannot interfere with them. 1 Vez. 119,, 284. In *88 the case of the lessee of Israel Robinson et al. v. Moses Robinson, tried at Reading, November assizes 1781, the plaintiffs claimed under a will dated in 1769, which was regularly proved, and letters testamentary issued thereupon. The defendant made title under a deed from his father, dated in * 1772, and a second will in the same year in confirma- png tion of it, which was afterwards set aside on a hearing L before the register and assistant justices in 1774. There the whole facts respecting the sanity of old Israel Robinson, at the time of the execution of the deed and will, were fully investigated. The act of 1780 left the effect of the register’s powers as it stood before, and merely superadded the right and mode of appeal from his decision.
Yeates J.
I was present when the cause of the lessee of Joseph Cook and executors v. George Brown, came on to trial at Carlisle, June assizes 1774, before Chew and Morton, and have taken full notes of the argument. The suit was brought professedly to try the validity of the will of Thomas Brown, which had been regularly proved on a caveat filed and hearing before the deputy register and assistant justices. In that cause the defendant’s counsel, who argued in support of the will, contended merely, that the will as proved was good evidence to lay before the jury, but abandoned the idea of its being undeniable and conclusive evidence as to the real estate. They insisted barely, that the adverse party must encounter it with other proof, in order to invalidate it. The opinion of the court was comformable thereto. The depositions of the witnesses taken before the deputy register and justices, were directed to go to the jury, and the plaintiff had liberty to contest the execution of the will or sanity of the testator, by introducing other evidence. The court said, that “the point of devisavit sive non, must be submitted altogether to the jury, upon a trial relating to the title of lands, “on the proof adduced to them.” It appears evident, that taking the arguments of the defendant’s counsel in the strongest point of view, the decision on the feigned issue could only affect the parties to the caveat. As to other contending parties, it would be res inter alios acta. But suppose on an'ejectment brought to try the validity of a will, it should be offered to be made appear, that the person whose will was attempted to be established was still in full life, or that the subscribing witnesses who had proved it had been convicted of perjury therein, or that the crimes of forgery or perjury could be fully proved by evidence at the bar, could it be reasonably urged that the copy of the will and depositions were still incontrovertible and conclusive evidence to the jury?
The chief justice then delivered the opinion of the court:
We conceive that the copy of this will, as proved under the *89 feigned issue, has been rightly suffered to be given in evi-deuce *to the jury, in pursuance of the express words -I of the act of assembly of 4th Annse, but that there is nothing in this act, compared with and restrained by that of 10th Annse, or the act of 1780, erecting the Court of Errors and Appeals, or in the act of 13th April 1791, or in any other act that we know of, which shews an intention in the legislature, that such a probate should be conclusive evidence of a will of lands. This court cannot wish the law was so. Suppose the utmost integrity and ability to be possessed by every register, they are still subject to err; and if even the fullest hearing has been had of all the contending parties, which is not generally the case, still new evidence and additional circumstances may turn up, which would weigh greatly in the scale of justice. We are of opinion, that the plaintiff in the present instance may give evidence of insanity, duress, forgery, fraud, undue influence, &c. in or upon the testator. We cannot compel the defendants to give further testimony, but the plaintiff may examine the witnesses who gave evidence in support of the will, on the feigned issue, and produce any other testimony to impugn the will, and the jury upon the whole, must form their judgments under the direction of the court. This mode of proceeding may appear awkward, but we are reduced to the dilemma by the positive words of the act of 1705, and we cannot help it.
The plaintiff’s counsel then called the defendant’s witnesses, who had been subpoenaed to prove the will, and proceeded to the examination of them; but the defendant’s counsel were at length permitted to take the proof into their own hands, in order to establish the will. While these witnesses were in the possession of the plaintiff, the measure appeared sufficiently outre.
It appeared upon the proof, that in the fall of 1787, Thomas Walmesley (the deceased,) had desired one Daniel Eivezley to draw his will, and gave him particular verbal directions concerning it; that on the nth February 1788 he repeated the several devises to him, and requested him to have it ready by the 14th following; that at the time appointed, Eivezley went to his house, where he mentioned the particulars of his will to him a third time, and in consequence thereof, Eivezley procured one Ezra Crosdale, the same day, to reduce it into writing exactly conformable to the testator’s directions, and brought it to him ready drawn. Eivezley asked him if he should read the will to him; he answered, it was no matter, he was then too poorly to sign it, but hoped he would be better in the morning, and would then put his name to it. On the second interview, he *com-J plained to Eivezley that the drawing of the will had been so long neglected. He died about two hours, after the *91 written will was brought to him, in a fainting fit, without executing it.
Messrs. Ingersol and Sitgreaves, pro quer.
Messrs. Sergeant, Wilcocks, and Wm. Ewing pro defts.
On the same nth February, 1788, testator complained to one Henry Ridge that he was uneasy in his mind that his will was not pertected, mentioned his earnest desire that Daniel Livezley should draw his will, and that he had given him special directions for that purpose. The particulars of these directions he repeated to Ridge.
The intentions of the testator, as to the general disposition of his property, and the reasons and grounds of his bequests, ■ were also proved by other witnesses in corroboration, to shew that the settled purpose of his mind, for some years previous to his death, had been, that his will should be drawn agreeably to the .instructions given to the said Daniel Divezley. Those express instructions given to the said Divezley by the deceased, as related by him on the nth February, at different times of the day, were proved by two witnesses; and the testator’s recognition, on the day of his death, that he had given the said Divezley directions to draw7 his will, was proved by three ^witnesses.
On the part of the plaintiff, it was contended, that the will in question was not proved by two witnesses, agreeably to the act of assembly of 1705, and the following cases were cited. 2 Blackst. Com. 376, 389, 499, 500. Swinb. 5, 6, 56. Cro. Eliz. 100. 8 Vin. 119, Bartlet v. Ramsden. 3 Atky. 156, 161. Dallas 278. Godolph. 15.
For the defendant it was urged, that judges will lean in favour of wills. 1 Burr. 420, 421. A will in Pennsylvania need not be signed or sealed by the testator, nor, subscribed by the witnesses. Dali. 94. The writing of a will from the mouth of witnesses is sufficient, and it need not be from the mouth of the testator; and though the devisor becomes senseless before the will be written, yet if it be written before he dies, it is a good will in writing. Alleyn 54, 55. In the present instance, there could be no doubt but the written paper corresponded with the testator’s intentions; and his special directions for drawing it were fully proved by two witnesses, within the words and spirit of the act of 1705. Other cases cited pro. def. were 5 Bac. Abr. 507, 508. Plowd. 345. Dyer 72. Godolph. 6, 11, 12. Swinb. 51, 52, 53, 56, 353, 354. 3 Stra. 764.
And of this opinion were the court in their charge to the jury, provided credit was justly due to the two witnesses, who proved * the special instructions for drawing his r*no will, said to be given by Thomas Walmesley in his *- life time.
Verdict for the defendants.
Cited in 6 S. & R., 455 ; 5 R., 82; 5 Wb., 396. Obsolete by the Act of 8, 1833. In Fransen’s Will, 26 Pa., 209, Chief Justice Gibson said
“Neither the English statute of wills, nor those sections of the English statute of frauds, which regulate the execution of devises, were re-enacted here or extended by adoption in practice. The Act of 1705 is the equivalent of the first, and the Act of 1833 of the second. The English decisions on the statute of the 32 H., 8, were resorted to as precedents to establish almost anything in the shape of a will, as may be seen in Walmsley v. Reed, I Yeates, 90; Rossiter v. Simmons, 6 Ser. & R., 425; Murray v. Murray, 6 Watts, 356; Barnett’s Appeal, 3 Rawle, 15; Rohrer v. Stayman, 1 Watts, 442; and Arndt v. Arndt, x Ser. & R., 256.”