## SMITH *against* BONSALL.

### IN ERROR.

A will of lands may be given in evidence on proof of its execution, notwithstanding a verdict and judgment in an issue of *devisavit vel non* from the Register's Court, against the validity of the will.

ERROR to the Common Pleas of Delaware County.

THIS was an ejectment for an undivided third part of a tract of land in Delaware county.

The plaintiff claimed as one of the heirs of *Eliza Ann Smith,* who died, seized of the premises in question, without issue, leaving as heirs at law, the plaintiff and two sisters, *Margaret,* intermarried with *Job H. Terrill,* and *Kitty E. Smith.*

The defendants proved by the subscribing witnesses, a paper purporting to be a will of the said *Eliza Ann Smith;* by which she devised and bequeathed all her estate real and personal, to the said *Margaret Terrill* and *Kitty E. Smith,* during their natural lives, and after the decease of the survivor of them, to her nieces *Emeline* and *Ann Louisa Terrill,* in fee simple.

(Smith *v.* Bonsall.)

The competent understanding of the said *Eliza,* and her unbiassed determination as to testamentary provisions, was also proved by several witnesses.

The defendants' counsel then offered in evidence the said paper, as the last will of the said *Eliza*: which was objected to by the plaintiff, who gave in evidence in support of the objection, the proceedings of the Register's Court of Delaware county, upon a caveat filed by *Thomas P. Smith,* the plaintiff, against the probate of the said paper writing, directing an issue to try the validity of the said will: and the record of the Court of Common Pleas on the issue, in which the verdict and judgment were for the said *Thomas P. Smith.*

The court overruled the objection, and admitted the paper as the last will of the said *Eliza Smith ;* to which admission the plaintiff excepted.

The court charged the jury that the verdict and judgment in the feigned issue, were *prima facie* evidence of the fact found by that verdict—the invalidity of the alleged will—but that the *prima facie* evidence had been rebutted by the testimony now adduced, and that the verdict and judgment were not conclusive, because the evidence then before the jury might have been, and probably was much weaker, and less sufficient than the evidence now produced.

The verdict was for the defendants.

The plaintiff in error assigned for error, the admission of the paper writing in evidence as the will of *Eliza Ann Smith,* notwithstanding the proceedings in the Register's Court and Court of Common Pleas—the instruction of the judge in the charge, that the verdict and judgment of the Common Pleas were not conclusive, as to the validity of the alleged will: and that the *prima facie* evidence of the said verdict and judgment had been rebutted by the testimony given on the trial, that testimony being directed only to the fact of the actual and voluntary execution of the paper, and the sanity and competent understanding of the testator.

*Dick* for the plaintiff in error.

The proceeding before the register to establish the will, was a proceeding *in rem,* and therefore, the judgment or decree rendered is conclusive on all the world, unless it can be impeached for fraud or collusion. 1 *Stark. Ev.* 241. (3rd Am. ed.) 17 *Serg. & Rawle,* 143. 2 *Rawle,* 178. The English doctrine, that the probate is conclusive only as to personal property, rests on the ground that the ecclesiastical courts have no jurisdiction of real property. 1 *Stark. Ev.* 231, note 1. But here the register has jurisdiction of wills, in respect to real as well as personal estate, and therefore, the decree must conclude as to lands as well as chattels. The act of 1705, 1 *Smith's Laws,* 33, sec. 1, requires that wills shall be proved and

(Smith *v.* Bonsall.)

*recorded or entered* in the register general's office, in order to pass lands, and the second section of the same act provides for the recovery of property, taken or detained under wills disproved or annulled within seven years. He referred also to the act of 31st· August, 1778, 1 *Sm. L.* 465, and the 7th sec. of act of 13th April, 1791. 3 *Sm. L.* 34.

To pass lands in Pennsylvania, a will must be proved, before the register. It cannot be established in this collateral way. *Taggart* v. *Toner*, 5 *Binn.* 496, 498. Lands cannot be claimed through a *disproved* will. The will in this case has been disproved. *Walmesley's Lessee* v. *Read*, 1 *Yeates*, 87, the leading case on the other side is a *nisi prius* decision, and ought not to be considered as establishing the law on this point.

Mr. *Dick* then examined the cases, 3 *Binn.* 498; 4 *Serg. & Rawle*, 193; 5 *Serg. & Rawle*, 212; for the purpose of showing that the question could not be considered as settled.

*Tilghman*, contra,—contended that it was well settled in this state, that the probate though conclusive as to personal, was only *prima facie* evidence as to real estate, and cited, *Walmesley* v. *Read*, 1 *Yeates*, 87. *Coates* v. *Hughes*, 3 *Binn.* 506. *Spangler* v. *Rambler*, 4 *Serg. & Rawle*, 193. *Logan* v. *Watt*, 5 *Serg. & Rawle*, 212. To entitle either a will or a deed to be read in evidence, it is only necessary to prove the execution of it on the trial. There is nothing requiring it to be registered or recorded before it can be given in evidence.

*Sergeant* replied, and referred to 10 *Wheat.* 468.

The opinion of the court was delivered by

KENNEDY, J.—In this case three errors have been assigned; there is however but one question, and to this they all have relation This action, which is an ejectment, was brought by the plaintiff in error, in the court below, to recover land claimed by him as one of the heirs at law of *Eliza Ann Smith* deceased. On the trial of the cause, it was admitted that he was one of three, who were all the heirs that the deceased left at the time of her death. The defendants claimed the possession of the land under an instrument of writing, purporting to be the last will of the deceased, which they alleged was duly executed by her in her lifetime; and after producing two credible witnesses, who testified to the fact, they then offered to read the same in evidence to the jury. It was objected to by the plaintiff's counsel, who showed that after the death of *Eliza Ann Smith* an effort had been made to prove and establish the same instrument of writing as her last will and testament, by producing it to the register where a *caveat* was entered, and the matter brought before the Register's Court, by which an issue *devisavit vel*

*non* was sent to be tried in the Court of Common Pleas, between *Kitty E. Smith* plaintiff, and the plaintiff in this case defendant, on trial whereof a verdict was given in favour of the present plaintiff against the will, which was accordingly rejected and condemned by the Register's Court. But the court below being of opinion that the defendants were not concluded by the decision of the Register's Court, overruled the objection and admitted the writing to be read in evidence. And whether it was properly received in evidence is the only question to be decided. That a will proved before the Register or the Register's Court and recorded in the Register's office, is not thereby conclusively established, so far as lands or real estate are concerned, has been settled and recognized in a train of cases that cannot now be controverted or overturned. Some of them are in print, of which the first is *Cook v. Brown,* decided at Carlisle, in 1774, and given by Mr. Justice YEATES in his report of *Walmesley* v. *Read,* 1 *Yeates,* 87; in which the probate of a will on a *caveat* filed, and hearing before the deputy register and assistant justices was held to be only *prima facie* and not conclusive evidence as to *real* estate. So in *Walmesley* v. *Read,* tried at Newtown, before Chief Justice M'KEAN, and Justice YEATES, in 1791, upon its being objected, that a copy of a will, the probate of which, after a *caveat* filed and a verdict of a jury upon an issue of *devisavit vel non* in its favour had been established by the Register's Court, ought not to be admitted in evidence, but that the original and the subscribing witnesses thereto, who were said to be still in full life, ought to be produced and the execution of the will proved by them, the court after overruling the objection and permitting the will to be read in evidence, said: " the copy of the will as proved under the feigned issue, has been rightly suffered to be given in evidence to the jury in pursuance of the express words of the act of Assembly of the 4th of Ann., but that there is nothing in this act compared with and restrained by that of the 10th of Ann. or the act of 1780, creating the court of Errors and Appeals, or in the act of the 13th of April 1791, or in any other act that we know of, which shows an intention of the legislature, that *such a probate* should be conclusive evidence of a will of lands. *This court cannot wish the law were so.* Suppose the utmost integrity and ability to be possessed by every register, they are still subject to error; and even if the fullest hearing has been had of all the contending parties, which is *not generally the case,* still new evidence and additional circumstances may turn up, which would weigh greatly in the scale of justice. We are of opinion that the plaintiff in the present instance, may give evidence of insanity, duress, forgery, fraud, undue influence, &c. in or upon the testator." In *Coates v. Hughes,* 3 *Binn.* 506, the court say it has been held as to personalty the probate is conclusive; as to *realty* it is only *prima facie,* and it was so settled in *Vangordon* v. *Vangordon,* where the probate was held to be only

(Smith *v.* Bonsall.)

*prima facie* evidence. Again in *Spangler* v. *Rambler,* 4 *Serg. &*
*Rawle,* 193, the court lay it down that, "with regard to *personal*
estate the decision is absolute ; but the verdict on the issue (meaning
the issue directed by the Register's Court to be tried in the Common
Pleas, to determine the validity of the will,) is not considered as
conclusive, with respect to *real* estate. The *party* who is *dissatis-*
*fied* may have the title tried in an ejectment." Likewise in *Logan*
v. *Watt,* 5 *Serg. & Rawle,* 213, the same position is repeated by
Mr. Justice Duncan, in delivering the opinion of the court, who
says, "in Pennsylvania the probate of a will devising lands, is
*prima facie* evidence." From these authorities and the general and
unqualified terms in which it has been so often decided and laid
down, that the probate of a will as to lands in Pennsylvania is not
conclusive, it would seem to be the natural if not the necessary con-
clusion, that the decision of the register or the Register's Court is
only so, whether it be for or against the validity of the will : it
would be somewhat anomalous I apprehend if it were otherwise.

It has however been argued that all these decisions and *dicta* of
the courts and judges, were made and delivered in cases, where the
wills had been approved by the register or the Register's Court, and
that there is no case to be found in which, the paper purporting to
be a will, after being condemned by the register or Register's Court,
has been adjudged admissible in evidence, on the trial of a cause, in
order to establish a right to the land devised by it, upon making
proof first by two credible witnesses of its due execution by the tes-
tator. That to do so, would militate against the express declaration
of the act of 1705, on the subject of wills, which requires, as is alleged,
that every will must first be recorded in the Register's office, before
it can be received in evidence as such. For this the first section of
the act is relied on, which is as follows : "all wills in writing wherein
or whereby, any lands, tenements, or hereditaments within this prov-
ince, have been, are, or shall be devised, *being proved by two or more*
*credible witnesses, upon their solemn affirmation, or other legal proof in*
*this province,* or being proved in the chancery of England, and the
bill and answers transmitted hither, under the seal of that court, or
being proved in the Hustings or Mayor's Court in London, or in
some manor court, or before such as have, or shall have power in
England or elsewhere, to take probates of wills, and grant letters of
administration, and a *copy* of such will *with the probate* annexed, or
indorsed, being *transmitted hither,* under the *public* or *common seal* of
the *courts* or *offices* where the same have been, or shall be taken, or
granted, and *recorded* or *entered in the register general's office in this*
*province,* shall be good and available in law for the *granting, convey-*
*ing* and *assuring* of the *lands* or *hereditaments* thereby given or
devised, as well as of goods and chattles thereby bequeathed : and
*copies* of all wills and probates under the public seals of the courts
or offices, where the same have been, or shall be taken, or granted

(Smith *v.* Bonsall.)

respectively, *other than copies* or *probates* of such wills as shall appear to be *annulled, disproved* or *revoked,* shall be judged and deemed, and are hereby enacted to be matter of record, and shall be evidence to prove the gift, or devise thereby made." Now it is evidently a misapprehension of the terms, and also, as I think, of the true meaning of this section of the act, to say that it requires a will which is proved within the state, to be recorded before it shall be admissible as evidence; for it is not *wills* but the *copies* of such wills, with the probates thereof, as shall be proved abroad, in England or elsewhere, and shall be transmitted hither, under the public or common seals of the courts or offices, where the same shall be taken, that are directed to be recorded, or entered in the register general's office. With regard to the proving of wills within the state, the act merely declares, that, "all wills in writing, wherein or whereby any lands, &c. have been, or shall be devised, being proved by two or more credible witnesses, upon their solemn affirmation, or by other legal proof *in this province,*" (now state,) without saying when, where, or before whom, such proof shall be made, "shall be good and available in law, for granting, conveying and assuring of the lands, &c. thereby given or devised." Such being the terms and the direction of the act, it is difficult to imagine why the proof of the will should not be made for the first time, on the trial of an ejectment, for the land devised by it, as well as at any other time or in any other place : indeed it would rather seem, in the absence of all positive direction in the act as to this point, to be the most suitable time and occasion, according to the rules of the common law, to make such proof of the will. But the clause of the act, in respect to the recording of *copies* of wills, has been adjudged to be merely directory and no wise necessary to be complied with, even to make such copies evidence. In *Morris* v. *Vanderen,* 1 *Dallas,* 65–6, where the plaintiff produced the probate of a will, under the seal of the prerogative court of Canterbury in England, to prove title to the lots in question, in those under whom he claimed, the *probate not being recorded in the Register's office,* was objected to by the defendant's counsel, but the court held it was admissible evidence and accordingly received it.

It has also been said, that to admit a writing purporting to be a will, that has been condemned by the register or Register's Court, to be proved and given in evidence on the trial of an ejectment for the land thereby devised, is against that clause of the section already recited, which declares that, "the *copies* of all wills and probates under the public seals of the courts or offices &c. *other than copies of probates of such wills as shall appear to be annulled, disproved, or revoked,* shall be deemed &c. matter of record, and shall be good evidence to prove the gift or devise thereby made." But it is very apparent that this clause has no application whatever, to the original wills themselves being proved, and given in evidence on the

(Smith *v.* Bonsall.)

trial of a cause involving the question of right to the land thereby devised, but merely to the copies under seal, &c. of such wills as had been previously admitted to probate, and making them good evidence to support the gift or devise therein contained, unless the originals thereof had been subsequently to their probate annulled, disproved or revoked, in the manner mentioned in the second section of the act; so that wills which never have been admitted to probate, or have been condemned and rejected when offered for that purpose, are not embraced, nor intended to be so by this clause or part of the act.

Having answered the objections attempted to be raised against the decision of the court below from the terms of the act of assembly relative to wills, it may not be improper to ascertain the character and efficacy given by the act itself to wills devising lands. It declares that all wills in writing whereby lands are devised, being proved by two or more credible witnesses in this state, without directing how, in what manner or before whom this proof shall be taken or made, shall be good and available in law for the *granting conveying* and *assuring* of the lands thereby devised. Thus in terms giving to them the character and efficacy of conveyances, in addition to the peculiarities belonging to them as *wills,* which exempt them from some of the rules, to which deeds of conveyance are subject at common law: and in this light and character, they were viewed and considered by this court in *Girard* v. *the City of Philadelphia,* 4 *Rawle,* 323. The act then having prescribed no particular mode or manner in which wills devising lands shall be proved by two or more witnesses, the common law, in order to carry the provision of the act in this behalf into effect, will supply the omission, by permitting and enabling the party claiming land under a will, to prove it according to the principles of the common law, as he would a deed of conveyance, by two or more witnesses, where he claimed under it. It is true that the probate made before the register of a will devising lands will entitle it, or a certified copy of it from him under his hand and seal of office, without further proof of its execution, to be read in evidence; but there is no authority whatever for this in the act of assembly. It is a rule founded on practice; and I presume, grew at first out of the authority given the register to take probate of wills, for the purpose of granting letters testamentary thereon, which related merely to the personal estate of the testator. So a will disposing of land proved by two witnesses before a justice of the peace of the county where the land was situate, has been admitted in evidence. *Lessee of Sharp* v. *Petit,* 4 *Yeates,* 413. Looking upon it merely as a conveyance, this possibly, without stretching the recording acts too much, might be covered by them, but practice I believe has been considered the ground of its authority.

In the cases referred to, in which it has been held or said that the

probate of a will respecting lands taken before the register or the Register's Court was not conclusive, certainly no distinction was taken between the effect of a decision approving the will and one condemning it. But in *Spangler* v. *Rambler,* 4 *Serg. & Rawle,* 193, the late Chief Justice in what he says evidently had reference to a decision as well against as for the will. His words are " with regard to *personal* estate the decision is absolute, but the verdict on the issue (meaning of *devisavit vel non*) is not considered as conclusive with respect to real estate. The *party* who is *dissatisfied* may have the title tried in ejectment." The term " party" here plainly means either, and that the one or the other party as he may happen to be dissatisfied, may test the validity or invalidity of the will in an action of ejectment, so that he must have entertained the opinion that a person claiming land under a will which had been condemned by the register or the Register's Court might afterwards try the validity of it in an action of ejectment. I am also inclined to believe that the same opinion has ever been pretty generally received by both judges and lawyers in this state; and that the practice has been to some extent in accordance with it. In *Sharp* v. *Petit,* 4 *Yeates,* 413, although it is stated in the marginal syllabus of the case that the will was registered, yet that does not distinctly appear from the report to be so : still it is possible it was the fact ; but when we consider that the will uniformly remains with the register after being recorded, and that on the trial of *Sharp* v. *Petit* a third subscribing witness to the will, who had not proved it before the justice of the peace, was produced in court, and testified to the execution of the will, the conclusion would rather seem to be that the will was still in the possession of the party and produced by him in court for the inspection of the witness, who could not have testified well without its presence. So, from *Robinson et al.* v. *Robinson,* mentioned by Messrs. *Ingersoll* and *Sitgreaves,* counsel for the plaintiffs in *Walmesley* v. *Read,* 1 *Yeates,* 88, 9, it most clearly appears that the defendant gave in evidence in support of his right to the land in dispute, a will which had been condemned and rejected by the Register's Court. The cause was tried at Reading, November assizes, 1781, where the plaintiffs claimed under a will dated in 1769, which was regularly proved, and letters testamentary issued thereupon. The defendant made title under a deed from his father dated in 1772 and a *second will* in the same year in confirmation of it, which had been set aside on hearing before the register and assistant justices in 1774, and the *whole facts* respecting the *sanity* of old *Israel Robinson* at the time of the execution of the deed, and the *second will,* were fully investigated.

At this time I recollect one case, and only one, which came under my own notice when at the bar. It was an ejectment brought and tried in the Court of Common Pleas of Fayette county by the lessee of *A. Murdock* v. *Miller and others.* The plaintiff claimed the land in dispute under a will alleged to have been duly made by the testa-

(Smith *v.* Bonsall.)

tor in his lifetime, but lost after his death without being proved. On the trial he offered evidence to show the existence, due execution, loss and contents of the will.    Mr. *Campbell*, counsel for the defendants objected to the evidence being given, not on the ground that the will had never been proved before the register or Register's court, but because, if it ever existed and was lost, being in law a *conveyance* and a link in the plaintiff's chain of title to the land, it fell directly within the provisions of the acts of the 28th of March 1786, and 19th of January 1793, empowering the Supreme Court, and the Courts of Common Pleas within this state, to supply defects in the titles to lands occasioned by the loss of deeds or writings respecting the same : that the loss of the will supplied in the manner prescribed by these acts would have been more safe as well as better evidence than that offered; and that the plaintiff was therefore bound to resort to that mode of establishing the will, otherwise he could not give evidence of it.    The court on the authority of *Hamilton* v. *Van Swearingen, Addis.* 48, accordingly overruled the evidence, which compelled the plaintiff to take a non-suit.  Hence I infer that Mr. *Campbell*, who was not only of a very discriminating mind, but a good lawyer, and had, for years before that, been engaged in an extensive practice of the law, considered it no objection to the will being proved on the trial of the cause, that it had never been proved before the register or the Register's Court. Indeed it may perhaps be doubtful whether the register or the Register's Court, have any power to supply the loss of a will devising land by receiving evidence of its execution and contents, and making a record thereof so as to make the same evidence on the trial of an ejectment or other action involving the title to the land.    The acts of assembly last mentioned, seem to provide only for cases of loss which happened prior to their passage, and if so, I am inclined to believe that a party claiming land under a will lost, without being proved and recorded, since the date of these acts has no way by which he can establish the will but by the production of witnesses to prove it on the trial of the cause, or by filing a bill to perpetuate testimony and proceeding to have the evidence taken under it.    Besides, other exigencies may occur which would prove fatal to the right of the party claiming lands under a good will, unless he can commence and maintain actions of ejectment without having probate first made of it before the register or the Register's Court, or be permitted to do so after the will has been condemned by the Register's Court, without waiting until he can have it established upon an appeal to the Supreme Court.    Suppose for instance a testator devises his lands, of which adverse *possession* has been had for nearly twenty-one years, but before probate can be made of the will that period will have run ; the consequence will be, that unless the devisee can commence and maintain his action of ejectment before probate, he must be barred of his right under the *will* by the statute of limitations.    If he must delay commencing his suit

(Smith *v.* Bonsall.)

until he can have the will admitted to probate in the Register's Court, and put on record, years may elapse before he can bring his action, for the question of will or no will, may be taken from the register to the Register's Court, where the trial of an issue sent to the Common Pleas may have to be waited for, and after that the decision of the Register's Court is had, the matter may be carried by appeal to the Supreme Court, where a further delay of one or two years may have to be encountered, before the proof of the will is finally established, so as to have it recorded in the Register's Office. The Register's Court may decide against the will, and the Supreme Court in favour of it, and to say that the devisee during all this time, shall not be permitted to recover the possession of the land devised to him by action, it being withheld, would indirectly be deciding that the will shall not take effect immediately upon the death of the testator, though the law has ever been considered otherwise. If the devise of the land be a fee simple interest, vested in possession, the right of possession as well as that of property passes to the devisee the instant that the testator dies; and thus he becomes invested with the right of entry into the land, or a right to bring and maintain an action of ejectment to recover the possession of it if withheld from him; but if he is not permitted to exercise this right, then he has a right without a remedy, which cannot be. *Lex semper dabit remedium,* is the maxim of the common law; and our constitution declares that every man, for an injury done him in his lands, &c. shall have remedy by the due course of law, and right and justice administered without denial or delay: but if the delay attending the probate should happen to be such as to permit the statute of limitations to become a bar to the devisee's right, it could not be considered any thing short of an absolute denial of justice, and would seem to contravene the provisions of the constitution.

It also appears to me that it would scarcely comport with the spirit and genius of our law in regard to land-titles to hold that the decision of a register or Register's court unappealed from, whether in favour of or against a will devising lands, shall be final and conclusive upon all concerned. There is certainly no other species of writing, under which a party can claim title to land, that he has not a right to have at least two trials in ejectment brought for the land, where a full opportunity will be afforded upon each trial of testing its vali*dity*; and nothing short of two decisions against him by a court and jury in such actions will conclude him. A deed for instance, under which a plaintiff in ejectment claims the land, may be denied, and yet notwithstanding the jury, under the direction of the court, on the trial of the first action, pronounce it a forgery, and on that ground find a verdict against him, he may if he thinks the first decision wrong, bring a second action of ejectment and submit the validity of his deed with all, and new, and additional evidence if he has it, to the decision of another jury, who will not be bound

by the decision of the first jury, and if they should be satisfied from the evidence adduced that the deed is good, ought to find in his favour. Then why should a will devising lands be made an exception, seeing that it is of quite as much importance as a deed conveying them can be, and that the execution of it is much more likely to be attended with circumstances which may render a close, diligent and scrutinous examination necessary in order to determine whether it really be the last will of the testator or not. I confess that I am unable to perceive any good reason why as much latitude should not be allowed in this respect to a party claiming under a will as under a deed.

But it has been said, that as the probate of a will in regard to personal estate is conclusive upon all persons, so it ought to be in respect to real; because the value of the former, disposed of by will, is frequently much greater in amount than that of the latter. Admitting this to be true, still it does not furnish a sufficient authority for courts in this state to disregard the great care and concern uniformly evinced by the legislature over real estate, beyond what they seem to have discovered for personal, in all their acts on the subject. By the act against frauds and perjuries they have placed a guard around the owners of land, to protect them in the enjoyment of their rights to the same, as well as to prevent them from making an indiscreet and incautious disposition thereof, by requiring that all rights to lands, excepting leases not exceeding the term of three years, shall be acquired and transferred in writing signed by the party disposing of the same; leaving personal estate and the rights thereof to be disposed of by delivery merely under verbal agreements as at common law. So by the act of 1705, on the very subject of wills now under consideration, in order to pass the right to land it is made necessary, as we have seen, that they should be in writing, while personal property to any amount may be given and disposed of by nuncupative wills or word of mouth. We have also stated already that a party claiming a right to land is not bound and concluded by one decision alone of a court and jury given in an action of ejectment against him, but may if he chooses have a second trial and investigation of it in a new ejectment brought by him for that purpose; whereas one decision in any form of action is conclusive in regard to a right to personal estate however great the value or amount may be. Again, justices of the peace have a limited jurisdiction given to them by acts of assembly over rights to personal property, but in no case whatever can they take cognizance of a matter in which the right to land or real estate will come in question. They to be sure may by act of assembly take probate of deeds conveying lands, but then such probates are but *prima facie* evidence of such deeds having been executed, and not conclusive. And no doubt this is going a sufficient length; first because there may be and generally is no opportunity afforded by notice to all concerned of contesting it; and, second, because the interest and intricacy of the questions involved

(Smith *v.* Bonsall.)

are generally too important to be committed to the decision of a justice of the peace so as to make it conclusive. And here, in illustration of the case before us, let us suppose a deed of conveyance were offered for probate before a justice of the peace, and after hearing the proof he should be of opinion, that the execution of it had been unfairly obtained, and therefore reject the proof and the deed; it would scarcely be contended, I apprehend, that the party claiming under the deed in case of an ejectment brought afterwards by him to recover the land conveyed by it, ought to be precluded from showing on the trial of the cause that his deed was good, notwithstanding it had been shown to have been rejected, or in other words, condemned by the justice when offered for probate before him. And indeed I am far from being satisfied that the most, if not all I have just said in regard to justices of the peace and their taking probate of deeds is not equally applicable to registers and Register's Courts, and their taking probate of wills devising lands.

Upon full deliberation, after examining the question presented to us in all its various bearings, I think the judgment of the court below right, and that it ought to be affirmed.

Judgment affirmed.