JOHN JOHNS, and MARY M. JOHNS, his Wife *vs.*
SARAH W. HODGES, and others.

*Effect of Insufficient allegations in a Bill on a Decree passed by
Consent—Relief in Equity by the appointment of Receivers
pending the Caveat to a Will—Effect of Refusal of Probate
to a Will of Real Estate—Construction of Act of 1831, ch.
315, and of Art. 93, of the Code, secs. 311, 315 to 329 inclu-
sive, and secs. 249 and 250, relating to the Probate of Wills.*

While a caveat to a will was pending, the caveators filed a bill in
equity against the other parties in interest, asking for the appoint-
ment of a receiver to take charge of the real estate and manage
the same, and receive the rents thereof, until the controversy re-
specting the validity of the will could be settled. After answer
filed, wherein it was alleged that part of the real estate in contro-
versy was then in the possession of J. J., one of the defendants,
under his claim as devisee, an order or decree was passed, appoint-
ing receivers as asked for in the bill. The decree stated that it
was passed " by consent of all parties claiming the property," and
it was passed in pursuance of an agreement in writing entered into
by all parties interested in the case. Under issues from the Orphans'
Court, a verdict was afterwards rendered in a Court of law, in favor
of the caveators and against the will. After final action by the
Orphans' Court, refusing probate to the will, a petition was filed
by the complainants, praying the discharge of the receivers. J. J.
and his wife also filed a petition, alleging that their claim was a
question of pure legal right and asking that the Court grant them
leave to sue the receivers conjointly with the complainants in an
action of ejectment, and, in effect, asking the retention of the re-
ceivers for that purpose, and to await the issue of such action of
ejectment. The Court passed a decree dismissing the petition of
J. J. and wife; discharging the receivers after the rendition of the
account ordered, and the collection of the rents in arrear; and
directing the surrender of the property to the heirs-at-law. On
appeal from this decree, and all decrees in the case, it was HELD:

1st. That although the prayer of appeal was broad enough to cover
the original decree appointing the receivers, the Court was not

Johns *vs.* Hodges, *et al.*

called upon to go into the inquiry whether sufficient allegations were made in the original bill to warrant the interposition of the Court, inasmuch as the appellants in their answer concurred in the view that such action as was asked for by the complainants was necessary to the protection of all in interest, including themselves, and afterwards entered into the agreement for the decree which was passed, and even now were asking to have the receivers continued, and that they might have leave to sue them in ejectment as such.

2nd. That the relief which was granted on the prayer of the complainants, was not unusual and without precedent, and if there were omissions from the original bill of certain allegations, which ought to have been incorporated to make the ground for equitable interference clear on the face of the bill, the Court, at this stage of the case, must treat the whole proceeding as regular and proper, and refuse to go behind the decree which was passed by consent and in the interest of all.

3rd. That the refusal of probate to the will, after issues framed in the Orphans' Court for trial before a jury, in a Court of law, and the verdict of the jury thereon adverse to the will, effectually concluded the devisees, and prevented them from proceeding by ejectment upon the will itself, without probate, and renewing the issue as to its validity in that way before another Court and jury.

4th. That there was no error in the order of the Court below restoring the possession of the real estate to the heirs-at-law.

5th. That the decree of the Court undertook to decide nothing finally as between the parties respecting their title, but recognized the heirs as apparently entitled, inasmuch as the decision that had been had in a Court of competent jurisdiction was against the validity of the will, and in so doing the Court was fully justified by authority.

Uniform decisions in this State under the Act of 1798, have held the rejection of probate of wills of personal property unappealed from, or appealed from and affirmed, conclusive against the will and the rights of any person dependent upon it.

The same rule applies to wills of real estate under the Act of 1831, ch. 315, and the Code which retains its provisions, and supersedes all other law on the subject.

Section 311, of Article 93, of the Code, provides, that the Orphans' Courts and in their recess, the Registers of Wills in this State, are authorized to take the probate of any will, testament, or codicil,

whether the same has relation to real or personal estate, or to both real and personal estate." Sections 315 to 329 inclusive, provide for notice, caveat, and contest in the Orphans' Court, and sections 249 and 250, provide for issues to be sent to a Court of law, and trial before a jury of the grounds on which probate is resisted; but the final decree in the Orphans' Court after such issues are tried, and the result is certified, is necessary to secure probate or its refusal.

It could not have been intended that the issue of such contest against the will, and the consequent refusal of probate, should be wholly unavailing and fruitless, as would be the case if the devisee might again assert his right by an action of ejectment, and relying on a will denied probate, could have the decision of a jury and the Orphans' Court on the question reviewed and set aside by the verdict of a new jury in an ejectment case.

Section 323 of said Article, provides, that "any probate of a will or codicil taken by the Orphans' Court or Register of Wills, so far as the same concerns real estate, shall only be taken as *prima facie* evidence of such will or codicil." HELD:

That this provision could not be rightly interpreted as asserting that the refusal of probate in such case shall only be *prima facie.*

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*William P. Maulsby,* and *William M. Merrick,* for the appellants.

On the questions touching the appointment of the receivers, the following authorities were relied on: *In Re Rachel Colvin,* 3 *Md. Ch. Dec.,* 287, 280; *Ellicott vs. Warford,* 4 *Md.,* 80; *Colvin vs. Warford, et al.,* 17 *Md.,* 433; *Pfeltz, et al. vs. Pfeltz, et al.,* 14 *Md.,* 376; *Williamson vs. Wilson,* 1 *Bland Chy. Reps.,* 418, 431; *Angel vs. Smith,*

9 *Vesey, Jr.*, 335, 337. And on the questions touching the discharge of the receivers, and ordering the property to be surrendered to the heirs-at-law, they cited *Massey vs. Massey*, 4 *H. & J.*, 141; *Warford, et al., Lessee vs. Colvin,* 14 *Md.*, 532 to 556; *Waters, et al. vs. Waters and Wife,* 35 *Md.*, 531; *Secs.* 252, 323, 328 *of Art.* 93 *of the Code;* 2 *Story's Equity, sec.* 1447, *and note* 3; *Bootle vs. Blundell,* 19 *Vesey,* 502; *Angel vs. Smith,* 9 *Vesey, Jr.*, 335–7; *Evelyn. vs. Lewis,* 3 *Hare,* 472; *Crossland's Ex'rs vs. Murdock,* 4 *McCord,* 217; *Spangler, et ux. vs. Rambler,* 4 *Sergeant and Rawle,* 192; *Logan vs. Watts, et al.,* 5 *Sergeant and Rawle,* 212; *Smith vs. Bonsall,* 5 *Rawle,* 80; *Walmesley's Lessee vs. Read,* 1 *Yeates,* 87.

*Arthur W. Machen,* and *I. Nevett Steele,* for the appellees.

At the common law, the probate was not evidence for any purpose in a Court of law as to a will concerning land, because the Ecclesiastical Court had no jurisdiction to take probate of wills disposing of real estate. By the Act of 1831, jurisdiction was given, and the probate became evidence, and would have been conclusive evidence but for the statutory qualification—now found in section 323 of Article 93 of the Code. The cases, therefore, that proceed upon the old common law doctrine, are not authorities upon the present question.

The necessity of probate in order to support an assertion of the title under the will, has always been recognized, we believe, since the passage of the Act of 1831, which first gave completeness and coherence to the testamentary law of this State—both in practice and in the adjudications of the Court of Appeals.

In *Dorsey, et al. vs. Warfield, et al.,* 7 *Md.*, 65, it was held that a devisee of land has such an interest in the question of the probate of the will, as to entitle him to appeal from a decree of the Orphans' Court annulling the probate.

And in a case subsequent to *Warford's Lessee vs. Colvin,* and in which the effect of the probate of a will devising real estate, was under consideration, the Court said, "When probate is granted, authority to determine what passes under the will is devolved upon the Courts of law or equity, tribunals which are clothed with ample jurisdiction to decide the question.    Probate is indeed NECESSARY *to enable the parties claiming under the will to assert, in the appropriate forum, their title to the property it professes to pass."    Schull vs. Murray, Exc'r,* 32 *Md.,* 9 *and* 16. And see—*Tompkins vs. Tompkins,* 1 *Story R.,* 547, 554 ; *Shumway vs. Holbrook,* 1 *Pick.,* 114 ; *Langhton vs. Atkins,* 1 *Pick.,* 548, 549 ; *Parker vs. Parker,* 11 *Cush.,* 525 ; *Osgood vs. Breed,* 12 *Mass.,* 543, 544 ; *Dublin vs. Chadbourn,* 16 *Mass.,* 433 ; *Poplin vs. Hawke,* 8 *N. H.,* 124 ; *Patten vs. Tallman,* 27 *Maine,* 27 ; *Fortune vs. Buck, et al.,* 23 *Conn.,* 1, 8 ; *Robertson vs. Barbour,* 6 *Monroe,* 527–9.

The case presented in the bill for the maintenance of the receivership being at an end, and a necessity having thus arisen for the delivery over of the possession of the lands, to whom could the Court direct them to be delivered except the heirs, whose *prima facie* right had been confirmed by the refusal of probate to the wills under which the adversary claim had been set up ?

And what possible injury can be done to the appellants by putting the heirs in possession, even upon the appellants' assertion of a purpose on their part to prosecute further litigation in a Court of law ?    If they wish to bring ejectments, are not the heirs the proper defendants ?  The appellants, indeed, have asked permission to bring ejectments against the receivers and heirs *conjointly ;* would not the real defendants in such actions, be the heirs ? Why needlessly complicate the matter by the association of the receivers, whose possession in such case would but be representative of the heirs' possession ?

The case of the appellants can stand no better at the utmost, than if they were complainants in a bill, filed at this time, applying for the appointment of receivers to take charge of the property. And it is very clear that such a bill upon all the facts in evidence could not be sustained, even if the question of title could be regarded as still open. *Colvin vs. Warford, et al.*, 17 *Md.*, 433.

Upon the discharge of the receivers, the Court must order the possession to be delivered to the parties apparently entitled. The heirs in this case have, at the least, the *prima facie* title. They have more than presumption in their favor; to say nothing now of the effect of a decree of the Orphans' Court, there is the verdict of a jury on their side. *In the matter of Rachel Colvin*, 3 *Md. Ch.*, 278–9; *Kipp vs. Hanna*, 2 *Bland*, 31; *Hannah K. Chase's Case*, 1 *Bland*, 213; *Lloyd vs. Trimleston*, 2 *Molloy*, 81, 12 *Eng. Chy. Cond.*, 353, 354; *Speights vs. Peters*, 9 *Gill*, 472; *Knighton vs. Young, et al.*, 22 *Md.*, 359 *and* 372; *High on Receivers, sections* 575, 840; *Smith vs. Collyer*, 8 *Vesey, Jr.*, 89; *Ex parte Clark, Jacob*, 592.

Effort is made on the part of the appellant, John Johns, to make a distinction as to that small portion of the estate —the dwelling house and curtilege on the farm known as Dover—which he holds as tenant to the receivers. It is claimed that this house and lot stand on a different footing from the rest of the property. But the object, and the effect, of the agreement of the parties before referred to, was to put it in precisely the same condition as the rest. The fact that John Johns, upon the death of John T. Johns, had intruded into the house in question, gave him no rights there. He was but an *abator*, and the heir could have entered, or ousted him summarily by a proceeding under the statutes of forcible entry and detainer. 3 *Black. Com.*, 168.

IRVING, J., delivered the opinion of the Court.

The will of John T. Johns having been offered for pro-bate in the Orphans' Court of Baltimore County, the same was caveated by the heirs-at-law of the alleged testator, and issues were framed and sent to a Court of law for trial, to test the validity of the will, and whether the same should be admitted to probate. Pending this contest, the caveators, the appellees in this Court, filed their bill in equity in the Circuit Court for Baltimore County, asking the appointment of a receiver to take charge of the real estate, and manage the same and receive the rents thereof, until the pending controversy respecting the validity of the will could be settled.

All parties in interest were brought in, and answered. By their answer, they renew their denial of the allegations of the caveators, affecting the validity of the will under which they claim, but while they assert the validity of the will, they express willingness "to agree to any arrangement that may be necessary and proper to protect their interest pending said litigation, and inasmuch as the controversy may deter tenants from paying rents, and otherwise prove injurious to the property, unless the same be taken in charge by the Court, they consent to the appointment of receivers to preserve and manage the property," &c. The answer asserts the possession of part of the estate, viz., the mansion property of the deceased, by John Johns, who had taken possession thereof after the death of the testator, under his claim through the will. But by agreement, under which a decree appointing receivers was passed, this part of the real estate was put into the possession of the receivers also at an agreed rental. The agreement for the order appointing receivers, is as follows: "It is agreed by all parties interested in this case that the Court shall pass an order on the bill filed, appointing Stewart Brown and R. R. Boarman receivers, and that said order shall include all the real estate of the decedent,

Johns vs. Hodges, et al.

including the part of the estate mentioned in the answer, as now in the possession of John Johns. It is understood, however, that the receivers shall rent said part of the estate so occupied by said John Johns, at the rent of one hundred dollars per annum, to said John Johns, who shall thereafter hold the same as tenant of the receivers, to await the final decision of the pending controversy about the will of said John T. Johns." In pursuance of this agreement, the Court passed an order or decree, appointing the receivers as asked for in the bill, which decree states it to be by "consent of all parties claiming the property." This decree was dated the seventeenth day of October, 1881.

On the 28th of June, 1883, the complainants filed their petition for the discharge of the receivers, on the ground that a verdict had been rendered in their favor and against the will. This petition being premature, because the Orphans' Court had not finally adjudicated the case, no action was taken, and on the 15th of November following a supplemental petition was filed, alleging the final action of the Orphans' Court in refusing probate to the will, after the verdict upon the issues had been certified to that Court, and praying the discharge of the receivers. The appellants also filed a petition alleging that their claim was a question of pure legal right, and asking that the Court grant them leave to sue the receivers conjointly with the parties complainant, in an action of ejectment; and in effect asking the retention of the receivers for that purpose, and to await the issue of such action of ejectment. This application was resisted by the heirs-at-law, who contended that their suit was for the protection of the property pending the controversy in the Orphans' Court, and *only* during such controversy; and insisted that now that the will had been refused probate they were entitled to be restored to the possession as *prima facie*, at least, entitled to the property. This view the Court adopted and

passed a decree dismissing the petition of the appellants, asking for a continuance of the receivers and for leave to sue them in ejectment; discharging the receivers after the rendition of the account ordered, and the collection of the rents in arrear; and directing the surrender of the property to the heirs-at-law. From this decree and all decrees in the case appeal was taken. The prayer of appeal is broad enough to cover the original decree appointing the receivers, and it has been argued in this Court that sufficient allegations were not made in the original bill to warrant the interposition of the Court. Into this inquiry we are not called upon to go; for the appellants in their answer concurred in the view that such action as was asked for by the complainants, was necessary to the protection of all in interest, including themselves, and afterwards entered into the agreement for the decree which was passed; and even now they are asking to have the receivers continued, and that they may have leave to sue them in ejectment as such. The relief which was granted on the prayer of the complainants, is not unusual relief and without precedent, and if there were omissions from the original bill of certain allegations, which ought to have been incorporated to make the ground for equitable interference clear on the face of the bill, we must at this state of the case, treat the whole proceeding as regular and proper, and refuse to go behind the decree which was passed by consent and in the interest of all.

The main question which is raised in this case is of great interest and importance, and has never been the subject of express decision in this Court, if indeed it has ever been raised in the State. It may be stated thus: Does the refusal of probate to a will of real estate, after issues framed in the Orphans' Court for trial before a jury in a Court of law, and a verdict thereon adverse to the will, effectually conclude the devisee? or may the devisee, not-

withstanding the verdict and order of the Orphans' Court thereon, proceed by ejectment upon the will itself, without probate, and renew the issue as to its validity in that way before another Court and jury?

Before the Act of 1831, chapter 315, the probate affected only wills of personal estate. The Act of 1798 made no provision for wills of real estate being proved or contested; but that Act did make provision for the *custody* of such wills by the Register of Wills, and for the punishment of any person who should fail to deliver a will left in his custody, to the Register within a certain number of months. If a will of personal estate was refused probate, it could not be offered for probate, by express provision of the statute, in any other county; but the right of appeal was given, and the decision of the appellate tribunal was made conclusive. Uniform decisions in this State under the Act of 1798 have held the rejection of probate of wills of personal property unappealed from, or appealed from and affirmed, conclusive against the will and the rights of any person dependent upon it. The question here is, shall the same rule be applied to wills of real estate under the Act of 1831, or the Code which retains its provisions, and supersedes all other law on the subject? Sections 310 and 311 of Article 93 of the Code of Public General Laws, read as follows: "310. Probate of wills may be made in the following manner that is to say: 311. The Orphans' Courts, and in their recess, the Registers of Wills in this State are authorized to take the probate of any will, testament, or codicil, whether the same has relation to real or personal estate, or to both real and personal estate." Sections 315 to 320, inclusive, provide for notice, caveat and contest in the Orphans' Court, and sections 249 and 250 provide for issues to be sent to a Court of law and trial before a jury of the grounds on which probate is resisted; but the final decree, in the Orphans' Court after such issues are tried and result is certified, is necessary to se-

cure probate or its refusal.   The argument is, that as all this minute provision is made for contest, it could not have been intended that the issue of such contest against the will, and the consequent refusal of probate, should be wholly unavailing and fruitless; as would be the case, if the devisee may again assert his rights by an action of ejectment; and relying on a will denied probate, can have the decision of a jury and the Orphans' Court on the question reversed and set aside by the verdict of a new jury in an ejectment case.   This argument seems to us without satisfactory answer.   It would certainly be making the verdict of the jury in an ejectment suit, in a Court of law, of higher authority than that of a jury chosen for the express purpose of trying the question of *devisavit vel non,* in aid of the Orphans' Court.   It would seem to be making a Court of law sitting in an ejectment suit, a Court of probate of higher authority than the Orphans' Court which is *expressly* given probate jurisdiction; and which is the only *Court of probate* known to the law of the State.

The very question having been distinctly presented to a jury in a way for which express provision has been made in the statute, and on that verdict a Court of competent jurisdiction having made a decree against the will, by the ordinary rules of law it ought to be conclusive.   In the *Duchess of Kingston's Case* it was distinctly laid down, that the judgment of a Court of concurrent jurisdiction directly upon the point, is as a plea in bar or as evidence conclusive between the same parties upon the same matter in another Court ; and that the judgment of a Court of exclusive jurisdiction directly upon the same matter between the same parties, is conclusive upon the question arising incidentally in another Court for a different purpose. 11 *Harg. State Trials,* 261.   We will consider whether this is an exception to these general rules.   No other mode of probate is provided for except that in the Orphans' Court. It is given the jurisdiction expressly; and both wills of

realty and personalty, are provided for in the same section of the Code. No difference is made or indicated, except that made in section 323 which will be presently considered. Although by sec. 314 any will may be proved in any county where a majority of the witnesses live and letters may be granted, yet by section 321 if the adjudication of the Orphans' Court in one county should be adverse to the will, it is expressly provided that "it shall not be received for probate in any other county." It seems clear from this provision that the rejection of the will for probate was intended to be conclusive against its validity, and that the action of the Court having obtained jurisdiction of the subject-matter and parties, was intended to be final, unless reversed by the appellate tribunal, to which provision was made for all decisions of the Orphans' Court to be taken for review.

Section 323 of Article 93 provides that "Any probate of a will or codicil taken by the Orphans' Court or Register of Wills, so far as the same concerns real estate, shall be taken only as *prima facie* evidence of such will or codicil." The appellants rely on this section, and argue that the principle of *mutuality* requires that a decree adverse to the will should be no more conclusive in favor of the heirs than a decree in favor of the will should be against them. That may be equitable as an abstract proposition, but the question is, did the Legislature so intend? The qualification is express and without ambiguity. The appellees insist that it is a sufficient answer to the appellants' contention, that there is no corresponding exception made in favor of the devisee. If there had been it seems to us, that it would have made these minute provisions respecting probate or its refusal a futile mockery. Probate being provided for and its contest carefully secured, it must have been intended to make probate a condition precedent to the instrument being used as a will for any purpose. If probate was not necessary why not sue in

ejectment at once, without tendering it for probate ? Section 323 makes the saving, that so far as real estate is concerned the probate shall be only *prima facie,* but does not say the refusal of probate in such case shall be only *prima facie ;* and we think the exception made was because of the favor with which the law has always regarded the heir. It was a concession to the presumption that the ancestor will not for light cause disinherit the heir, and to the ancient view that title by inheritance is the more honorable. However conducive to public and private convenience it would have been to make the probate proceedings conclusive for all purposes, the Legislature has not seen fit to make them so, but has made the exception noted; and the question now is, shall we accord the language employed a meaning not naturally imported, and make the probate proceedings conclusive for *no* purpose. In effect, we think the saving by implication declares that without probate the will shall *not* be *prima facie.* But inasmuch as probate may have been improperly secured, the heir, who, in natural order but for the will, would have succeeded to the title and possession, shall not be precluded from attacking the probated will. The *burden* of showing the will void and improvidently probated is by the probate thrown upon the heir. The object being plain, and the language unambiguous and apt to express the intent, it ought to be adhered to.

The office of a proviso in a statute is either to restrain its general application or except something from it and exclude misinterpretation. *Potter's Dwarris on Statutes,* 118 *and note.* The same authority says it is always to be strictly construed. This provision is in the nature of a *proviso,* and must be construed accordingly, by giving it a strict construction and restricting the exception within the limits which the language naturally imports. The statement that in a will of lands the probate thereof shall only be *prima facie* can mean but one thing, and it would be dis-

torting it to make it mean also that its refusal is only *prima facie.* It is essentially different from saying, "that neither probate nor its refusal shall be of any avail, but either may be again questioned" in a Court of law in an action of ejectment. A construction is always regarded vicious which requires material change in, or departure from, the language employed in the statute ; and to accord the statute the meaning contended for by the appellants would require substantial interpolation of language, not found in the statute, nor suggested by any that is there.

The creation of a Court for a particular purpose, and the clothing it with all the powers necessary to its jurisdiction over the subject and the parties interested, without giving concurrent jurisdiction to any other tribunal, by the familiar maxim, " *designatio unius, exclusio est alterius,*" would seem to exclude the jurisdiction of any other than the one specially authorized. Judge STORY in *Tompkins vs. Tompkins,* (1 *Story,* 547–554,) in discussing the like question arising under the law of Rhode Island, says, the giving of jurisdiction to a tribunal to take the probate of a will, notwithstanding no exclusive words were used in the statute, operated to make the jurisdiction of the authorized tribunal exclusive and its decisions conclusive on the question. Such decisions, he says, are of like nature with proceedings *in rem,* " and necessarily conclusive of the matter in controversy for the common safety and repose of mankind." The law of Massachusetts contains no exclusive words, yet the jurisdiction of Courts of probate is held to be exclusive. 1 *Story Rep.,* 554, *and Osgood vs. Breed,* 12 *Mass.* 525. In *Greenleaf's Evidence,* 2 *vol., sec.* 672, it is said that this is the generally accepted law in those States of the Union where Courts of probate are established. Counsel for the appellants rely on *Bonsal vs. Smith,* 5 *Rawle,* 80, and other cases in Pennsylvania which have followed it, because of the eminence of the Court pronouncing that decision and

supposed similarity of the statutes construed.    Careful
examination of that case, however, discloses that the stat-
ute of the State it was interpreting, did not require *wills*
*of land made in the State* to be proved before the Register,
and *therefore*, the *Court said a will of that kind might be*
*first produced and proved* in an action of ejectment.   That
case declares the law as it was in England, and as held here
before the Act of 1831, ( *Massey vs. Massey*, 4 *H. & J.*,
141); and cannot be a guide to us in determining the
effect of the Act of 1831, which was manifestly intended
to work a radical change in the whole testamentary sys-
tem in respect to wills of real estate   The case of *Massey*
*vs. Massey*, 4 *H. & J.*, though a decision of our own Court
of Appeals, is not applicable to the question now before us.
It declared the law as it stood before the Act of 1831, the
construction of which it cannot aid us in deciding upon.
That statute, as to probate, put wills of realty and per-
sonalty on the same plane, and made all the regulations
respecting the contest of wills of personalty applicable to
wills of realty ; and we do not see how due effect can be    ₒ
given to the language employed and provisions made for
probate and contest thereof, without holding a decision of
the Orphans' Court, as a Court of competent jurisdiction,
after full trial, denying probate, as conclusive in the case
of wills of real estate, as it has always been under the Act
of 1798, as to wills of personalty.   The right to make a
will is a purely statutory right.   The statute declares who
may make a will, and how it must be made to be valid as
a will of lands.   Before it can be put on record the wit-
nesses must be sworn as to the testator's capacity to make
it ; and if it be a will of land, if possibly procurable, all the
witnesses must be sworn on the subject, (*vide* sec. 323,) and
their depositions are written out and recorded with the
will as evidence of its validity.   By these provisions of the
statute law it was clearly intended to clothe the will with
the evidence of its genuineness and validity, that parties

taking under it might assert their title through it; and in view of those provisions we can not think it was intended to make it *prima facie* evidence as a will without the probate being attached. If, when offered for probate, the will be attacked as invalid and issues be framed for trial before a jury, and the verdict be against the will, and the Orphans' Court decree that it shall not be admitted to probate, it surely ought not afterwards to be received in any other Court as evidence that it *is*, what a jury and a Court of competent jurisdiction have said it *is not.*

We can see no good reason for making the refusal of probate, under the statute as it now stands, conclusive upon a *legatee* and not conclusive upon the *devisee.* It requires the making of an arbitrary and indefensible distinction, not suggested by any language of the statute. In this instance the conclusion was reached by a jury, and the Court, after fullest investigation touching the testator's capacity to make a will, with all the parties interested under that will, and all the heirs-at-law parties to the proceeding and represented. It ought to be conclusive upon all. There should be an end of litigation on that question. If it were not so, at any time within twenty years, when the witnesses upon whose testimony the will was rejected may have died, the question might be raised by ejectment against the heirs-at-law. We can not but think, the fact, that though more than a half century has elapsed since the Act of 1831 was passed, no case seems to have been brought based on a different view, is an argument in favor of the soundness of that which we take.

To adopt the view contended for by the appellants' counsel, would not only require a most unnatural construction of the legislation on the subject, but would bring about a very singular and anomalous condition of things if the plaintiffs in an ejectment suit should succeed. A will would be given efficacy which had been refused probate

and record; and for the record of which, under the new finding no provision has been made, and which could not be got on the records without additional legislation. The Legislature could not have contemplated such a state of things, or it would not have omitted to provide for the contingency. A still more singular state of things may be imagined if a contrary view prevailed, and the testator had left several wills, of different dates, making different dispositions of his real estate in each. We might see all the devisees under the several wills suing at the same time, thus leading to inextricable confusion and uncertainty. The will involved in this case lacks that authentication, which, according to the view we have taken, is needed to make it *prima facie* evidence as a will to support an ejectment. There was no error therefore in the dismissal of appellants' petition.

It only remains to determine whether there was error in the order restoring possession to the heirs-at-law. When the receivers were appointed, the will was not proven; its probate was contested, in regular way. The devisees were in possession of none of the property except the homestead, which the record shows that John Johns had taken possession of and was in possession of, when the application was made for the appointment of receivers. The Court took the custody and control of all the estate, including that of which John Johns had taken possession, and he rented it from the receivers. The decree of the Court undertakes to decide nothing *finally* as between the parties respecting their title; but it recognizes the heirs as *apparently entitled* inasmuch as the decision that has been had, in a Court of competent jurisdiction, was against the will's validity; and in so doing the Court was fully justified by authority. The case of *Rachel Colvin*, 3 *Md. Ch. Dec.*, 278, *and Hannah K. Chase's Case*, 1 *Bland*, 213, seem to sustain the Court's view; and Chancellor HART's decision in *Lloyd vs. Trimleston*, 2 *Molloy*, 81, is

especially applicable. There the Lord Chancellor said: "as it stands, the result of the proceedings is against the will, and Lord Trimleston, being the heir-at-law, has, I think, a title to be in possession." It was not a final adjudication that he was entitled, but as the case stood he was entitled to possession on the discharge of the receivers. The question of title was still left open to be determined at law. The especial objection to the decree in this regard is, as we understand it, that John Johns was not remitted to the possession he had when the receivers took charge. The decisions we have cited seem to cover this aspect of the case also; but if they do not, no body was injured. He could have asserted his right by ejectment and had the question adjudicated in that way as to his right, instead of by this appeal. But we have decided that he could not use the unprobated will in support of his title, and the restoration of possession would have been nugatory, for he could not have defended it. In any aspect of the case, therefore, no injury was done by the decree. The decree will be affirmed.

*Affirmed and remanded.*

(Decided 5th December, 1884.)