NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0808n.06

No. 15-5519

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 10, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

COURTNEY SIMMONS,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

BEFORE: BATCHELDER and GRIFFIN, Circuit Judges; and CARR, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Courtney Simmons pleaded guilty to possessing a firearm as a convicted felon

in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 100 months'

imprisonment based on a cross-reference to attempted first-degree murder under the Sentencing

Guidelines. On appeal, defendant both challenges the cross-reference and argues that the use of

an improper identification procedure violated his due process rights. We disagree and affirm.

I.

On August 25, 2013, security guard Andrew Tarrell Lee responded to a gambling

complaint at the Kimball Cabana apartment complex in Memphis, Tennessee. Kimball Cabana

is a "problem spot" for Memphis-area crime. Local prosecutors designated the complex a

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern
District of Ohio, sitting by designation.

"Safeway property," meaning only residents and their visitors are allowed on the premises; "[y]ou can't be just loitering outside." Lee enforced this policy.

In the parking lot, Lee saw a group of "six or seven" men gambling, including defendant. Though he did not know their names, Lee recognized defendant and the others from prior incidents at the complex and knew they were not residents. Lee approached and asked for identification. The men refused and cursed at him. At that point, Lee contacted the Memphis police for assistance. He ordered the group to leave the property. "Fuck you," defendant replied, walking back toward the complex. Lee told defendant he was under arrest, and defendant ran around the apartment building and outside the gate. Just then, the police arrived. They pursued defendant but could not catch him. As he ran, defendant shouted back at Lee: "I'm going to get you, punk mother fucker."

Lee ended his shift between 2:00 a.m. and 3:00 a.m. (*Id.* at 142). While walking out to his car, Lee saw a man "run [out] from the corner of the [apartment] building very fast." He wore black clothing with a hoodie and a mask covering his face. The man came within 10 feet of Lee and cocked a shotgun at him, warning, "[d]rop it off, you punk mother fucker." He pulled the trigger and Lee jumped to the left, narrowly avoiding fire. Fearing for his safety, Lee grabbed his own gun and returned fire. The man fell to the ground, but Lee was unsure whether he was hit. Instead of responding to Lee's commands to put up his hands, the man motioned toward his belt as if reaching for a weapon. Lee fired again. The man started yelling for help. He pulled off his mask, "and that's when [Lee] got a clear look at his face." Lee recognized it was defendant—the same person who threatened him hours earlier.

Property manager Joyce Alana awoke to "the sound of a humungous boom" and witnessed the incident from her apartment window. At first, Alana saw only one man, "dressed

2

like in all black," with a black hoodie. He fired a shotgun at another man who came into view later and returned fire. Alana called 9-1-1. Once he was hit, the man in black crawled toward the apartment where police later found defendant. Like Lee, Alana did not know defendant by name, but had seen him around Kimball Cabana and recognized him.

A grand jury indicted defendant on one count of being a felon in possession of a firearm. Though he pleaded guilty to the charge, defendant denied any involvement in the shooting at the sentencing hearing. He also denied gambling at the complex. Defendant explained he went to Kimball Cabana around 1:00 a.m. to give his cousin a haircut. There, he encountered a group of men in the parking lot. They told defendant they were "about to mess with the security guard" by "pull[ing] a prank" and shooting the guard's car. Defendant intended to leave, but "stayed and kept walking" in front of the men. Suddenly, one of them fired a gun in the air, and another fired at a nearby car. Defendant ran until he was shot in the back of his right shoulder. He acknowledged wearing dark clothing, but stated he was not wearing a hoodie.

Defendant's presentence report calculated a base offense level of 33 because of a cross-reference to attempted first-degree murder under the Sentencing Guidelines. *See* U.S.S.G. § 2K2.1(c)(1)(A) & 2X1.1. With a two-level reduction for acceptance of responsibility and defendant's category III criminal history score, the resulting Guidelines range was 135 to 168 months imprisonment, subject to a statutory maximum of 120 months. *See* 18 U.S.C. § 924(a)(2). Defendant objected to the attempted murder cross-reference.

Finding Lee and Alana more credible than defendant, the district court determined that "the enhancement . . . for assault with intent to commit murder is appropriate in Mr. Simmons' case." Applying a downward variance from the Guidelines range, the district court sentenced

defendant to 100 months' imprisonment, followed by three years of supervised release. Defendant timely appealed.

## II.

## A.

Unlawful possession of a firearm is sentenced under § 2K2.1 of the Guidelines. Section 2K2.1(c) authorizes a district court to substitute or "cross-reference" the offense level for any criminal offense that the defendant committed or attempted to commit in connection with his possession of the firearm, "regardless of whether a criminal charge was brought, or a conviction obtained" for the substitute offense. *See* U.S.S.G. § 2K2.1(c) cmt. 14(C). The government must prove facts warranting the cross-reference by a preponderance of the evidence. *United States v. Brika*, 487 F.3d 450, 459–60 (6th Cir. 2007).

Defendant challenges the factual findings underpinning the attempted murder cross-reference. He contends the district court erred in finding: (1) he was the individual who shot at Lee; and (2) that he did so with intent to kill.

"We review a district court's sentencing decision for reasonableness, which has both procedural and substantive components." *United States v. Garcia-Robles*, 640 F.3d 159, 163 (6th Cir. 2011) (citations omitted). A sentence is procedurally unreasonable if, for instance, the district court improperly calculates the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, ignores the factors set forth in 18 U.S.C. § 3553(a), fails to adequately explain a chosen sentence, or—as defendant argues here—bases a sentence on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review preserved procedural reasonableness claims for an abuse of discretion. *United States v. Davis*, 751 F.3d 769, 773 (6th

Cir. 2014). But "[w]ithin this framework," we evaluate the district court's legal determinations de novo and its factual findings for clear error. *Id.*

In support of his claim that the evidence was insufficient to establish his identity as the shooter, defendant highlights what he sees as contradictions in the government's proofs. For example, Lee and Alana believed that Lee shot his attacker in the front of the body, whereas defendant was shot in the back of his shoulder, consistent with his claim that he ran from the shooting. Lee's account of the incident also varied over time. Defendant notes that the report Lee gave to police immediately after the shooting did not state that Lee knew the shooter, or that the shooter wore a hoodie or mask. Lee similarly failed to mention the mask while testifying in an earlier state-court proceeding.

But defendant is too selective. None of these discrepancies leave us with a "definite and firm conviction that a mistake has been committed" in view of the evidence as a whole. *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted). First, Lee and Alana both expressed uncertainty about where defendant was shot, describing the location of the injury only "as far as [they] could see." Second, Alana testified she saw only two people in the parking lot, rebutting defendant's claim that another group of men was responsible for the shooting. Third, regarding defendant's clothing, Alana and Lee agreed the attacker wore a black hoodie intended to obstruct his face. The government also submitted photographic evidence of a mask found at the crime scene corroborating Lee's claim that defendant was wearing a mask. Finally, as to the police report, Lee clarified that he told the police he did not know the shooter's name, not that he did not recognize the shooter.

Beyond this, the district court questioned Lee directly, asking him to describe the mask, his relative position to the attacker, and the lighting in the parking lot. Lee answered to the

court's satisfaction. An overhead streetlight gave Lee a "good" look at defendant's face. He had "no doubt" defendant was the shooter. Under the clear error standard, "the fact that there *is* evidence in the record to support [a] finding is sufficient to preclude us from second guessing the [district] court's determination," *United States v. Wheaton*, 517 F.3d 350, 369 (6th Cir. 2008), and we will not do so here.

The same goes for defendant's claim that the district court erred in finding intent to kill. Murder is "the unlawful killing of a human being with malice aforethought," perpetrated by "poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated" means. 18 U.S.C. § 1111(a). "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (citation omitted); *see also State v. Kimbrough*, 924 S.W.2d 888, 891 (Tenn. 1996) (describing attempted murder under Tennessee law). According to the testimony, defendant engaged in a confrontation with Lee a few hours before the shooting and threatened to "get" him. He returned to the complex that night dressed in black clothing intended to conceal his identity. After lying in wait for Lee's shift to end, defendant ambushed him in the parking lot and fired a shotgun at him. The district court did not clearly err in finding defendant intended to kill Lee.

B.

Defendant next complains that the use of a suggestive photographic identification procedure violated his due process rights. Specifically, Lee testified that when he spoke with police after the shooting, they showed him a single photograph of defendant and "asked . . . was this the guy," to which Lee replied, "yes, that's him."

6

We review preserved constitutional sentencing challenges de novo, *see United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009), and unpreserved challenges for plain error, *see United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013). Defendant did not object to the identification procedure before the district court, but submits the preservation requirements should be excused because he did not learn of the suggestive procedure until Lee testified at the sentencing hearing. Yet, even with the benefit of de novo review, defendant has not established a violation of his due process rights.

The Due Process Clause prohibits the use of identification testimony at trial if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). To determine the validity of an identification procedure, we apply a two-part test: first, the defendant must demonstrate that the identification procedure was impermissibly suggestive; second, assuming the procedure was suggestive, the court considers whether the identification was nevertheless reliable under the totality of the circumstances. *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004). Those circumstances include:

> (1) the witness' opportunity to view the suspect; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the time between the crime and the identification.

*Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); and *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

"Although identifications arising from single-photograph displays may be viewed in general with suspicion," the total circumstances may nevertheless negate the "corrupting effect of the suggestive identification," particularly where the witness knows the defendant. *Manson*,

432 U.S. at 114, 116; *see e.g.*, *United States v. Shields*, 415 F. App'x 692, 702–03 (6th Cir. 2011) (use of single-photograph was not impermissibly suggestive where witnesses saw the defendant "numerous times prior to being shown the photograph"). Witnesses may have difficulty observing and later identifying a stranger, but they "are very likely to recognize . . . the people in their lives with whom they are most familiar, and any prior acquaintance with another person substantially increases the likelihood of an accurate identification." *Haliym*, 492 F.3d at 706. Here, Lee knew defendant from previous encounters at the apartment complex; he recognized defendant when he confronted the gamblers and when defendant removed his mask following the shooting. Alana's testimony that defendant was a regular at Kimball Cabana added weight to Lee's assertion that he recognized defendant. "[R]eliability is the linchpin in determining the admissibility of identification testimony," *Manson*, 432 U.S. at 114, and Lee's familiarity with defendant "substantially increase[d] the reliability" of his identification, *Haliym*, 492 F.3d at 707.

The totality of the circumstances additionally supports a finding of reliability. Lee had a clear view of defendant during the gambling incident and immediately after the shooting, and his concern for his own safety "also suggests a heightened degree of attention." *Id.* at 705. Further, Lee gave no prior inaccurate description of the perpetrator; he identified defendant at the police station within hours of the shooting, and expressed complete certainty in his identification. On the whole, Lee's identification was independently reliable and admission of his testimony did not offend defendant's due process rights. Defendant is not entitled to remand for resentencing or an opportunity to withdraw his guilty plea based on the suggestive identification procedure.

III.

We affirm the district court's judgment.