RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL MILLS,

*Defendant-Appellant*.

No. 24-1270

───────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cr-20244-1—Bernard A. Friedman, District Judge.

Decided and Filed:  January 16, 2025

Before:  COLE, WHITE, and MATHIS, Circuit Judges.

───────────────────

## COUNSEL

**ON BRIEF:**  Haralambos D. Mihas, SMITH MIHAS, Wyandotte, Michigan, for Appellant. Margaret M. Smith, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────────

## OPINION

───────────────────

MATHIS, Circuit Judge.  This case comes before us for a second time.  The district court sentenced Michael Mills to the statutory maximum for being a felon in possession of ammunition.  We remanded the case to the district court to make additional factual findings about a sentencing enhancement that significantly increased Mills's Sentencing Guidelines range.  The district court made those factual findings and reimposed the same sentence.  Mills once again challenges the application of the same sentencing enhancement and otherwise argues

that his sentence is procedurally infirm because the district court considered an improper factor and did not consider one of his sentencing arguments.  We affirm.

**I.**

Michael Mills's brother, Darius Brown, and cousin, Melvin Brown, were both members of the Detroit gang, It's Just Us ("IJU").  *United States v. Mills*, No. 22-1815, 2023 WL 7990348, at *1 (6th Cir. Nov. 17, 2023).  In spring 2018, IJU members allegedly killed Darius for cooperating with law enforcement.  *Id.*  In August 2018, Mills moved into Melvin's apartment and brought three guns with him.  *Id.*  Later that month, Mills saw two cars driven by IJU members near the apartment, so he warned his cousin.  *Id.*  Seeking answers as to Darius's disappearance, Melvin—armed with a 9mm pistol—approached the cars and entered the backseat of one of the vehicles.  *Id.*  Right after, a firefight broke out.  *Id.*  Mills ran into the fray with a loaded pistol-grip shotgun, firing two shots.  *Id.*  The shootout ended with the death of James Matthews Jr., an IJU member, who was seated in the front passenger side of one of the cars.  *Id.*

Mills fled the scene, but FBI agents eventually arrested him.  *Id.*  A grand jury charged him with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  *Id.*  A jury convicted him of that offense.  *Id.* at *2.

At sentencing, the district court found that Mills caused Matthews's death.  *Id.* at *3.  Based on Mills's role in Matthews's death, the court enhanced Mills's Guidelines range by cross-referencing to the second-degree-murder guideline under U.S.S.G. § 2K2.1(c).  *Id.*  The court sentenced Mills to the statutory maximum penalty of 120 months' imprisonment.  *Id.*

We affirmed Mills's conviction, but we vacated his sentence.  *Id.* at *8.  We concluded that the district court made insufficient factual findings on causation, Mills's justification defense, and Mills's mental state when it applied the second-degree-murder cross-reference.  *Id.* at *7–8.  At resentencing, the district court addressed all three issues.

*Causation*.  Mills acknowledged that he fired his shotgun twice at the cars containing the IJU members.  An autopsy report showed that Matthews died from a shotgun wound to the shoulder.  Officers recovered two shotgun shells outside the car occupied by Matthews.

The district court found that Mills caused Matthews's death.  The court noted that "Matthews was shot in the shoulder twice and that caused his death, and the only one that . . . in the facts in this case as we heard them that had a shotgun and had one that was fired and smoke coming out of it was" Mills.  R. 194, PageID 2052.

*Mens Rea*.  The district court found that evidence showed that Mills had the mental state necessary to sustain the second-degree-murder cross-reference.  Mills surrendered any pretense that the shooting was accidental with his social-media messages and posts leading up to the shooting.  In a May 2018 message to his sister, Mills wrote, "I miss my brother.  I'm down here in the city going through it.  I'm ready to kill sum [sic]." *Id.* at 2037.  Then after moving in with Melvin, Mills wrote that he was "sticked up over here," and also stated, "I'm not going to leave this bitch . . . until I get the mens [sic] who hurt my brother." *Id.* at 2037–38.  He further said, "Can't nobody talk me out of this.  If it kills me, I'm going to get these guys." *Id.* at 2038.

Mills did not limit his intentions to mere words.  When he moved in with Melvin, Mills brought ammunition, "a 9mm handgun, an AK-47 rifle, and a pistol grip pump action shotgun." *Id.*  On the day of the shooting, Mills, armed with a shotgun that he made sure was loaded, followed Melvin "to ambush IJU members." *Id.*  The government argued that Mills demonstrated malice aforethought or gross negligence when he "point[ed] a shotgun at the rear of a passenger vehicle in close range and fir[ed] it at least twice." *Id.* at 2042.

Based on these facts, the district court determined that when Mills shot at the car, he had a "man-endangering state of mind," or at the very least, acted "willfully and wantonly and callously." *Id.* at 2051.

*Justification*.  The district court rejected Mills's justification defense.  The court found that "there is nothing on the record that would indicate by a preponderance of the evidence or otherwise that there was justification." *Id.* at 2049.  The district court emphasized that "[i]f [Mills] stayed in the house and Matthews or somebody else came up to the house . . . [or] got out

of the car, maybe there would be some justification, but there's nothing here." *Id.* at 2050.  And "there was nothing there that even indicated any kind of reason for him to be in a position to fire his weapon for his own defense or for any other reason." *Id.*

\* \* \*

The district court again applied the second-degree-murder cross-reference, and proceeded to hear arguments about the sentencing factors.  Mills's counsel asked that the court consider the extenuating circumstances underlying the shootout—that Mills did not instigate the shootout, and that absent his intervention, Melvin would have been killed.  Mills's counsel also asked that the court consider Mills's conduct while incarcerated.

The district court explained its sentencing rationale.  The district court acknowledged that Mills was doing well in prison.  The court noted that, though the loss of a brother is "horrible," it did "not justify" Mills's actions.  *Id.* at 2059.  It also noted that Mills "was not supposed to be in possession of ammunition or any other kinds of weapons" but still brought weapons to his cousin's house and aimed to use them.  *Id.*  The court considered that Mills's criminal record, though not significant, included instances of disobeying law enforcement, and that deterrence was important given that this case involved gang activity.  And the court incorporated its discussion of the relevant mitigating and aggravating factors from the original sentencing hearing.

The district court imposed the same sentence as before—120 months' imprisonment.  Mills timely appealed.

## II.

Mills challenges the procedural reasonableness of his sentence.  A district court procedurally errs by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007).  Mills claims that the district court miscalculated

his Guidelines range.  He also challenges the court's consideration of (and failure to consider) certain sentencing factors.

We review sentences imposed by district courts under the deferential abuse-of-discretion standard.  *Id.*  "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law."  *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) (internal quotation marks omitted).  In applying the abuse-of-discretion standard, we review the district court's legal conclusions de novo and its findings of fact for clear error.  *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (citation omitted).  "A district court's factual determination is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that the district court made a mistake."  *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019) (internal quotation marks omitted).

**A.**

We consider first whether the district court correctly calculated Mills's Guidelines range when it applied the second-degree-murder guideline to increase his offense level.  Recall that a jury found Mills guilty of violating 18 U.S.C. § 922(g)(1) based on evidence that Mills shot and killed Matthews.  When sentencing a defendant for a violation of § 922(g), courts look to U.S.S.G § 2K2.1.  Under that guideline, if a defendant used or possessed any "ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," courts should "apply . . . if death resulted, the most analogous" homicide guideline if doing so results in a higher Guidelines range than the defendant would receive without applying the cross-reference.  U.S.S.G. § 2K2.1(c)(1)(B).  The district court cross-referenced to the second-degree-murder guideline.

Courts look to the federal murder statute to determine what constitutes second-degree murder.  *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994); U.S.S.G §§ 2A1.2; 2A2.1 cmt. n.1.  Under that statute, "[m]urder is the unlawful killing of a human being with malice aforethought."  18 U.S.C. § 1111(a).  Second-degree murder is any murder other than "murder [1] perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and

premeditated killing"; [2] committed while perpetrating or attempting to perpetrate certain enumerated offenses; [3] "perpetrated as part of a pattern or practice of assault or torture against a child or children"; or [4] "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed." *Id.* Second-degree murder "requires a finding of malice aforethought." *Milton*, 27 F.3d at 206.

What does malice aforethought mean? We have said that it "encompasses the state-of-mind of recklessness." *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021). Such recklessness occurs "when the defendant grossly deviates from the standard of care to such an extent that a [factfinder] could conclude that he must have been aware of a serious risk of death or serious bodily injury." *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (internal quotation marks omitted). So, for the cross-reference to apply, the government had to prove by a preponderance of the evidence that Mills acted at least recklessly when he shot and killed Matthews.

Mills raises a justification defense to applying the second-degree-murder cross-reference. Justification is a defense to second-degree murder. *United States v. Kepler*, 74 F.4th 1292, 1313 (10th Cir. 2023). "Justification pertains to the category of action that is exactly the action that society thinks the actor should have taken, under the circumstances." *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993) (internal quotation marks omitted). Mills bore the burden of proving justification to bar the application of the second-degree-murder guideline. *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004); *cf. United States v. Wilson*, 75 F.4th 633, 637 (6th Cir. 2023). To satisfy his burden, he needed to prove:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and

(5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008) (alterations in original) (quotation omitted).

The district court did not clearly err in finding that Mills committed second-degree murder. The district court concluded that Mills killed Matthews with malice aforethought based on three key facts. First, the circumstances just before the shooting did not require Mills to inject himself into the fray. The court observed that Mills "came out of the house locked and loaded." R. 194, PageID 2051. Second, Mills "willfully and wantonly and callously" fired his shotgun at the car, "not once, but twice," and demonstrated a "man-endangering state of mind." *Id.* Third, his social-media messages evinced a murderous mental state "directed to this situation and these people." *Id.* at 2052.

Mills responds that he was ambushed and sought to save his cousin's life, which he believes eviscerates any finding that he acted at least recklessly in killing Matthews. But this amounts to a "competing view" of the evidence, and to prevail, Mills must demonstrate "that his view of the evidence is the *only* view." *Grant*, 15 F.4th at 458 (quotation omitted); *United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021) (noting that we accept a district court's factual findings so long as they are plausible, "even if enough evidence exists for the opposite finding and even if we would have made that opposite finding ourselves." (citation omitted)).

Mills also has not shown that the district court clearly erred in rejecting his justification defense. Mills failed to satisfy element (2) of his justification defense—that he did not "recklessly or negligently place[] himself in a situation in which it was probable that he would be forced to choose the criminal conduct." *Ridner*, 512 F.3d at 850 (quotation omitted). Here, the district court found that Mills chose to leave the house and approach the cars, and in doing so, wrongly injected himself into a dangerous situation. The district court also found that Mills had viable options—he could have stayed inside, ran the other way, or called the police. This alone defeats Mills's justification defense. *See United States v. Kemp*, 546 F.3d 759, 766 (6th Cir. 2008) (noting that the "keystone of the analysis is that the defendant must have *no alternative—*

either before or during the event—to avoid violating the law." (quotation omitted)). Therefore, we need not consider whether Mills proved the other justification elements.

Because the district court acted within its discretion in finding that Mills killed Matthews with malice aforethought, it properly applied the second-degree-murder guideline when it calculated Mills's Guidelines range.

**B.**

Mills argues that the district court failed to properly consider the deterrence sentencing factor and Mills's mitigation argument. We disagree.

Mills contends that the district court inappropriately considered deterrence a significant sentencing factor because "this was a gang case," even though it was neither implied nor proven that he was a gang member. D. 11 at p.23. But the district court did not determine that Mills was a gang member. Instead, it stated that it was important to send a message of deterrence "in these gang kind of cases." R. 194, PageID 2059. The district court did not abuse its discretion by factoring in general deterrence of gang violence when it imposed Mills's sentence. *See United States v. Matthews*, 31 F.4th 436, 458 (6th Cir. 2022) ("[T]o the extent the court sent a message, it was one of general deterrence—a legally unassailable purpose for sentencing.").

Mills also contends that the district court disregarded his mitigation argument that the IJU gang members instigated the shooting and that he was merely defending his cousin. But the district court noted that Mills moved in with his cousin in preparation to act against IJU members. The preparation for a confrontation weighed against any mitigation.

The district court considered the applicable sentencing factors. *See United States v. Jaimez*, 95 F.4th 1004, 1007 (6th Cir. 2024). It discussed the need for deterrence, Mills's criminal history, the seriousness of the offense, the need to protect the public, just punishment, and the loss of Mills's brother. Therefore, the district court did not procedurally err.

**III.**

For these reasons, we **AFFIRM** the district court's judgment.