NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0555n.06

No. 24-5801

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 03, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| CHAD B. WOLF, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and WHITE, Circuit Judges.

The court delivered a PER CURIAM opinion. MOORE, J. (pp. 16–17), delivered a separate dissenting opinion.

**PER CURIAM.** Defendant Chad B. Wolf was sentenced to a total of thirty-nine months' imprisonment for his participation in a conspiracy to obtain Promethazine-Codeine ("codeine") cough syrup from pharmacies using fraudulent prescriptions. Wolf created fraudulent prescriptions using the identity information of unsuspecting individuals and served as an "escort," driving and paying "runners" who entered pharmacies and retrieved the filled prescriptions. On appeal, he challenges the application of a three-level managing-role enhancement pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(b) (U.S. Sent'g Comm'n 2023) for a "manager or supervisor" of a conspiracy that "involved five or more participants," arguing that the district court erred in finding that he was a manager and that the conspiracy involved at least five participants.

Because the factual record supports the district court's application of a three-level managerial enhancement, we **AFFIRM** Wolf's sentence.

## I. FACTUAL BACKGROUND

### A. Wolf's Conspiracy to Acquire Codeine Fraudulently

Beginning in July 2019, Wolf created fraudulent prescriptions to obtain codeine cough syrup. To draw up the sham prescriptions, Wolf and at least one other man, Richard E. Rogers, Jr., acquired the DEA numbers of physicians in Michigan and Kentucky. Wolf and Rogers submitted prescriptions for codeine cough syrup to pharmacies throughout Kentucky without the physicians' consent. They listed real persons, whose identifying information they had either stolen or bought, as the named "patients." R. 79 (PSR at ¶ 8) (Page ID #256). For this purpose, Wolf possessed the driver's licenses and social security numbers of "hundreds of people." *Id.* at ¶ 10.

Once the pharmacies filled the prescriptions, "escorts" drove "runners" to the pharmacies. *Id.* at ¶ 8. The runners retrieved the cough syrup, and in exchange, the escorts generally paid them $100. The escorts cut the codeine cough syrup with corn syrup and sold the resulting blend for up to $300 per ounce. The escorts involved in each transaction shared the proceeds equally—although an individual named Darius Murff took a cut, regardless of his involvement, until Wolf started to "organize the transactions" himself. *Id.* at ¶ 9. Wolf, Rogers, Murff, and at least four others worked as escorts, utilizing at least six runners. Wolf was involved in approximately 156 fraudulent transactions over nearly four years.

### B. The Proceedings Below

On December 7, 2023, a grand jury issued an indictment, charging Wolf with one count of conspiracy to acquire possession of codeine, a Schedule V controlled substance, by

misrepresentation, fraud, forgery, deception, and subterfuge, in violation of 21 U.S.C. §§ 843(a)(3) and 846, and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Wolf subsequently entered a plea agreement with the Government on April 29, 2024 and, pursuant to the agreement, pleaded guilty that same day to the conspiracy count and a single count of aggravated identity theft. In his plea agreement, Wolf admitted to stealing identity information for numerous fraudulent prescriptions and transporting and paying others to retrieve those prescriptions. With respect to the conspiracy count, he admitted that he "[s]ent people in the pharmacies to obtain promethazine-codeine cough syrup with fraudulent scripts" and "paid them to go in and get it and paid them for it . . . ." R. 87 (Rearraignment Tr. at 28) (Page ID #354).

The PSR recommended the application of U.S.S.G. § 3B1.1(a)'s four-level aggravating role enhancement, determining that Wolf was "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." R. 79 (PSR at ¶ 23) (Page ID #258) (citing § 3B1.1(a)). Applying that enhancement, the PSR calculated that Wolf's total offense level was ten and that he fell into criminal history category IV, resulting in an advisory Guidelines range of fifteen to twenty-one months' imprisonment on the conspiracy count. Because the aggravated-identity-theft count carried a mandatory, twenty-four-month consecutive sentence, Wolf's aggregate advisory Guidelines range was thirty-nine to forty-five months' imprisonment.

Before sentencing, Wolf objected to the application of the four-level organizing-role enhancement. He "d[id] not dispute the conspiracy in this matter involved 'five or more participants,'" but argued that he "was not an 'organizer or leader' of the conspiracy." R. 79 (Wolf's PSR Obj. at 2) (Page ID #277) (quoting U.S.S.G. § 3B1.1(a)). Instead, he argued that Murff had led the conspiracy. Thus, "he concede[d] a lesser enhancement may apply pursuant to

3

. . . §3B1.1(b) or (c)" but opposed the application of § 3B1.1(a)'s four-level organizing-role enhancement. *Id.*

In response to Wolf's objection, the Government identified another flaw with the four-level organizing-role enhancement. The Government stated that "there is evidence" that some of the "runners" were "on many occasions . . . being coerced or acting out of duress,"[1] and, therefore, could not be counted as "participants" because a participant must be "criminally responsible for the commission of the offense." R. 79 (Gov't's PSR Obj. Response) (Page ID #279) (citing U.S.S.G. § 3B1.1 cmt. n.1). And "[w]ithout the 'runners,'" the Government conceded that it could not "establish . . . that the charged criminal activity involved five or more participants." *Id.* The Government, however, contended that Wolf did qualify for the two-level enhancement in § 3B1.1(c) "because Wolf did participate by organizing and leading at least one other participant" and had also himself previously conceded that a lesser enhancement may apply. *Id.* (Page ID #279–80).

Despite the Government's concession, the probation department adhered to its recommendation that Wolf receive § 3B1.1(a)'s four-level organizing-role enhancement. In his sentencing memorandum, Wolf agreed with the Government that § 3B1.1(c)'s two-level enhancement—not § 3B1.1(a)'s four-level organizing-role enhancement—should apply. However, although Wolf "[did] not dispute that the conspiracy involved multiple 'runners' . . . he denie[d] [that] he threatened or coerced them as the Government claim[ed]." R. 61 (Wolf's Sent'g Mem. at 4) (Page ID #190).

---

[1] The Government did not identify any such evidence.

At the sentencing hearing, the Government reversed course. The Government withdrew its concession, no longer believing that "some of the runners" could make out a coercion defense. R. 85 (Sent'g Hr'g Tr. at 3–4) (Page ID #300–01). It argued instead that "some of the runners" had recklessly or negligently placed themselves in positions that had forced them to engage in criminal conduct. *Id.* at 4 (Page ID #301). Based on its reevaluation, the Government argued that Wolf was a manager and that the conspiracy involved five or more participants and, consequently, requested that the district court apply § 3B1.1(b)'s three-level managing-role enhancement.

Wolf's counsel did not argue that any of the runners had been coerced or that the conspiracy involved fewer than five participants. He, instead, agreed with the district court that Wolf's objection conformed to his written objections to the PSR. He also conceded, as he had "from the beginning," that "if you counted the runners . . . that would meet the five-level threshold." *Id.* at 5 (Page ID #302). Wolf's counsel, however, asked the district court to impose only § 3B1.1(c)'s two-level enhancement.

Though the Government had withdrawn its argument that some of the runners could make out a coercion defense, the district court considered that argument anyway and rejected it. It explained that anyone who "recklessly or negligently placed himself . . . in a situation in which it was probable that he would be forced to choose the criminal conduct" cannot successfully make out a coercion defense. *Id.* at 6–7 (Page ID #303–04) (citing Sixth Circuit Pattern Jury Instructions § 6.05). It found that "a number of" of the runners had done just that by acting as a runner on multiple occasions and "those individuals would meet the definition of participants, and, therefore . . . there would be more than five." *Id.* at 8 (Page ID #305) (citing R. 79 (PSR at 5–6) (Page ID #256–57)). The district court, moreover, observed that "[i]t's also not disputed that . . . Mr. Wolf[]

did have at least managerial responsibilities" without specifying which individuals Wolf managed. *Id.* In the end, the district court applied § 3B1.1(b)'s three-level managing-role enhancement.

Recalculating the Guidelines range for the conspiracy count, the district court found that Wolf's total offense level was nine and that he was in criminal history category IV, resulting in a new advisory Guidelines range of twelve to eighteen months' imprisonment. The district court imposed a fifteen-month sentence on the conspiracy count, plus a twenty-four-month consecutive sentence on the aggravated-identity-theft count—an aggregate total of thirty-nine months' imprisonment.

Before the sentencing hearing concluded, the district court requested that "the attorneys . . . state any objections that they may have, first, to the sentence that has been announced, and that would include the penalty and conditions of supervised release. Second would be any objections under . . . *Bostic*." *Id.* at 24–25 (Page ID #321–22). The district court explained that under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "any objections not previously raised should be raised at this time so that they may be addressed by the Court to be properly preserved for review on appeal." *Id.* at 25 (Page ID #322). The district court further stated that "if either party would like the Court to make further findings to support any of the determinations that have been announced, I'd be happy to make further findings upon request." *Id.* The Government did not raise any objections or request further findings. And Wolf's counsel informed the court that "Mr. Wolf has no objections to the sentence imposed, no objections under *Bostic*, and requests no additional findings." *Id.*

Wolf filed a timely notice of appeal.

## II. DISCUSSION

### A. Standard of Review

Wolf raises a single issue on appeal. He argues that his sentence is procedurally unreasonable because the district court improperly applied § 3B1.1(b)'s three-level managing-role enhancement.[2] Applying the enhancement was improper, he contends, because the district court neither specified whom he managed nor explained any facts that established the conspiracy's participants.

Before turning to the merits, we must first determine what standard of review applies. We held in *Bostic* that if a district court gives the parties a final opportunity to raise "any objections to the sentence just pronounced that have not previously been raised" and a party declines to do so, "then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." 371 F.3d at 872–73. Here, the district court scrupulously followed *Bostic*. The court gave the parties an opportunity to raise objections after announcing Wolf's sentence, explained that only objections placed on the record would "be properly preserved for review on appeal," and even offered "to make further findings" if requested by either party. R. 85 (Sent'g Hr'g Tr. at 25) (Page ID #322). Although Wolf now faults the district court's factfinding, his prior counsel rejected this opportunity to request clarification or elaboration.

Despite this clear record, the Government has not argued that Wolf forfeited this claim. For his part, Wolf advances the abuse-of-discretion standard of review but does not assert that the

---

[2]In his opening brief, Wolf indicated that he was also challenging the substantive reasonableness of his sentence. *See* D. 21 (Appellant's Br. at 13) ("Wolf's Sentence was Substantively and Procedurally Unreasonable . . . ."). He has, however, since withdrawn that argument. D. 28 (Reply Br. at 4 n.1).

Government forfeited plain-error review. Notwithstanding the parties' various waivers and forfeitures, and "even through plain-error review might be available for this claim," we will not apply that standard because we have not been "requested to do so by one of the parties." *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011); *see also United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, J., concurring) ("The government never asked us to apply plain-error review to this claim, which by itself is reason enough to not apply this standard to this issue."). Likewise, to the extent that Wolf may have waived this claim, the Government has forfeited any waiver argument. *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020).

Accordingly, we review Wolf's procedural-reasonableness challenge for abuse of discretion. *United States v. Duke*, 870 F.3d 397, 401 (6th Cir. 2017). "[A] district court abuses its discretion if it commits a significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *United States v. Callahan*, 801 F.3d 606, 626 (6th Cir. 2015) (quoting *United States v. Johnson*, 640 F.3d 195, 201–02 (6th Cir. 2011)). We review the district court's factual findings for clear error. *United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013). Although we typically review de novo the district court's interpretation of the Guidelines, *see, e.g.*, *United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020), we review "deferential[ly]" its legal conclusion that a defendant qualifies for a managing-role enhancement under § 3B1.1, *Washington*, 715 F.3d at 983.

## B. The Managing-Role Enhancement

Under § 3B1.1(b), a defendant is eligible for a three-level enhancement if the defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved

five or more participants or was otherwise extensive . . . ." To justify an enhancement, we "require[] a showing that the defendant managed or supervised one or more participants." *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. The Government must establish that a defendant qualifies for the managing-role enhancement by a preponderance of the evidence. *See United States v. Wells*, 55 F.4th 1086, 1092–93 (6th Cir. 2022).

Wolf argues that the district court clearly erred in finding both that he was a manager and that the conspiracy involved five or more participants. We disagree.

As an initial matter, Wolf several times conceded before the district court that he held a managerial role in the conspiracy and that the conspiracy involved five or more participants. In his objections to the PSR, Wolf conceded that "a lesser enhancement may apply pursuant to U.S.S.G. § 3B1.1(b) or (c),"—a reference to the exact enhancement he now challenges. R. 79 (Wolf's PSR Obj. at 2) (Page ID #277). And Wolf's request for a two-level enhancement under § 3B1.1(c), which applies "[i]f the defendant was an organizer, leader, manager, or supervisor," is a further admission that he played at least a managerial or supervisory role, a fact he elsewhere "does not dispute." R. 61 (Wolf's Sent'g Mem. at 3–4) (PageID #189–190); *see also* R. 79 (Wolf's PSR Obj. at 2) (Page ID #277). Similarly, Wolf repeatedly "[did] not dispute [that] the conspiracy in this matter involved 'five or more participants.'" (Wolf's PSR Obj. at 2) (Page ID #277); *see also* R. 61 (Wolf's Sent'g Mem. at 3–4) (PageID #189–190.) Indeed, Wolf maintained these concessions throughout sentencing, despite the Government changing its position on whether the numerosity requirement was satisfied. *See* R. 85 (Sent'g Hr'g Tr. at 5) (PageID #302) ("[W]e've

9

conceded from the beginning that if you counted the runners, the individuals in the cars, that would meet the five-level threshold."); *id.* ("[Wolf] would maintain his argument for a 2 [level enhancement]").

Even putting aside Wolf's concessions, the record supports that both requirements for a three-level enhancement were met. First, regarding the numerosity element, Wolf argues that the district court erred by failing to identify at least five participants in the conspiracy. The record demonstrates otherwise. At sentencing, in its assessment of the numerosity requirement, the district court discussed whether the runners could make out coercion defenses. As relevant here, to make out a coercion defense against their prosecution, the runners would have to show that they "had not recklessly or negligently placed [themselves] in a situation in which it was probable that [they] would be forced to choose the criminal conduct." *United States v. Mills*, 126 F.4th 470, 475 (6th Cir. 2025) (quoting *United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008)). The Government proposed that "some of the runners" could not make this showing. R. 85 (Sent'g Hr'g Tr. at 4) (Page ID #301). The district court agreed, noting the difficulty in establishing a coercion defense and the unlikelihood that such a defense would apply to "a number of runners" who had decided "on more than one occasion[] to go in to fill the prescriptions and, therefore, would have had the opportunity to have withdrawn from the criminal conduct." *Id.* at 7–8 (PageID #304–05).

Given the information in the PSR and Wolf's denial that he threatened or coerced any runner, the district court's inference that "a number of" runners would not be able to mount a coercion defense was reasonable. R. 85 (Sent'g Hr'g Tr. at 7–8) (Page ID #304–06). Although the PSR does not explicitly state that any particular runner participated in multiple pickups, the district court was free to draw reasonable inferences from the uncontested facts in the PSR. *United*

*States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). In light of the at least 156 transactions and the involvement of "at least six runners," we find no clear error in the district court's inference that it was more likely than not that some of the runners took part in multiple pickups. *See* R. 79 (PSR at 5) (Page ID #256).

Nor did the district clearly err in inferring that the classification of those runners as participants would meet the numerosity requirement. "[I]n considering the applicability of . . . enhancement[s] under U.S.S.G. § 3B1.1" we have held that "the district court must make specific findings as to the identity of the persons involved in the criminal enterprise." *United States v. Stubbs*, 11 F.3d 632, 641 (6th Cir. 1993). In *Stubbs*, the defendant argued that, because the probation officer who prepared the PSR could not identify five participants, the district court's application of a § 3B1.1 enhancement without itself identifying five participants was erroneous. Because "any conclusion as to the identity of the five participants [was] pure speculation," we "remand[ed] for further findings as to the identity of the persons involved in the criminal enterprise." *Id.*

Although the district court did not specifically enumerate the conspiracy's participants here, it stated that it was "adopt[ing] the findings that are contained in the [PSR]," R. 85, (Sent'g Hr'g Tr. at 9) (Page ID #306), which include the runners' identities. The circumstances before us are thus unlike those in *Stubbs*, where we reversed the defendant's leadership enhancement because the district court failed to identify five participants and the probation officer preparing the PSR also "could not identify the five participants in the criminal activity." 11 F.3d at 641. Here, although the district court did not make a specific finding, we need not engage in "pure speculation" as to the identity of the five participants because the PSR lists the participants' names.

*Id.*; *see also United States v. Elder*, 90 F.3d 1110, 1132 (6th Cir. 1996) (finding sufficient evidence in the record to meet the participant threshold because "[t]his court in *Stubbs* did not require a district court to identify the five persons whom the defendant organized, but merely required the identity of the five participants involved in the criminal activity.").

Furthermore, since *Stubbs*, we have held that "the failure to specify the factual basis for applying a § 3B1.1 enhancement 'is not grounds for vacating the sentence'" and "does not constitute reversible error" if factual support is apparent from the record. *United States v. Vandeberg*, 201 F.3d 805, 809–10 (6th Cir. 2000) (quoting *United States v. Alexander*, 59 F.3d 36, 39 (6th Cir. 1995) (superseded by statute on other grounds)).[3] Instead, when a district court does not "articulate the factual basis for an enhancement" under § 3B1.1, we review de novo the record to determine whether the enhancement applies. *Id.* at 810; *see also United States v. Garrett*, 295 F. App'x 778, 780 (6th Cir. 2008) (affirming three-level enhancement where record supported finding).

Applying the de novo approach, we reach the same conclusion. We can easily identify three participants: Wolf, Rogers, and Murff—all of whom were escorts.[4] And the PSR additionally lists six runners—Felicia Williams, Stephanie LNU ("last name unknown"), Mark

---

[3] The dissent charges us with bypassing *Stubbs* to conduct de novo analysis under *Vandeberg*, which it asserts is inapplicable. But, as discussed, *Stubbs* is distinguishable and, even under its analysis, Wolf's arguments fail. Further, although the dissent takes *Stubbs* to stand for a per se rule that the district court must make specific findings as to the identity of the persons involved in the criminal enterprise, our analysis in *Stubbs* reflects implicit consideration of the record. *See* 11 F.3d at 641 (noting that the PSR lacked identification of the five participants and that "[i]n the absence of specific findings by the district court, any conclusion as to the identity of the five participants is pure speculation"). To be sure, *Vandeberg* does not mention *Stubbs*, but we do not read the two as wholly incompatible such that *Vandeberg* can be said to have "abolished *Stubb's* factfinding requirement."

[4] Although the PSR lists five other escorts in addition to Wolf and Rogers, the Government acknowledged that the evidence "is imprecise as to whether [they] were participating in the same criminal activity as Wolf and Rogers." R. 62 (Government Sent'g Mem. at 2) (PageID #196). Due to these "vague characterizations, and no corroboration from other evidence in the case," the Government did not argue that the escorts should be considered participants. *Id.*

LNU, Will LNU, A.B, and Aaron Fawber—who were paid to pick up fraudulent prescriptions from pharmacies. Because Wolf did not object to the PSR's identification of six runners—and, in fact, conceded that the conspiracy involved five or more participants in his objections—the district court's reliance on these facts was reasonable. *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact"); *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) ("The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object.") (internal quotation marks omitted). "[A]lthough reciting the names [of the participants] would have established a clearer record, the court was under no obligation to do so" since it expressly stated that its conclusion was "based on the . . . PSR" and "the record supports the court's finding." *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017) (citation modified); *see also United States v. Thomas*, 373 F. App'x 538, 540-41 (6th Cir. 2010) (affirming district court's imposition of a leadership enhancement where it relied on the PSR and government testimony but did not itself identify the individuals it found to be participants).

The Government's prior assertion that certain runners would not qualify as participants does not disturb our conclusion. Despite the Government's shifting position, Wolf consistently and repeatedly conceded that the numerosity requirement was met. Indeed, Wolf reaffirmed his concession that the conspiracy included five participants "if you counted the runners" at the sentencing hearing *after* the Government retracted its stance that certain runners had a potential coercion defense.[5] R. 85, (Sent'g Hr'g Tr. at 5) (Page ID #302).

---

[5] Although this phrasing can be read as a qualified concession, Wolf never challenged that the conspiracy included five participants. *See* R. 79 (Wolf's PSR Obj. at 2) (Page ID #277) (objecting to the PSR's characterization of him as

Turning to the manager element, because the district court correctly understood that it was "not disputed that [Wolf had] at least managerial responsibilities," it did not explain how Wolf acted as a manager. *Id.* at 8–9 (PageID #305–06). Even so, the record sufficiently supports the district court's conclusion that Wolf played a managerial or supervisory role.

Wolf facilitated the creation of fraudulent prescriptions and their submission to pharmacies. Wolf admitted in his plea agreement that he stole identity information, including driver's licenses, from unsuspecting individuals and acquired DEA information for medical providers. He "organiz[ed]" transactions and transported and paid runners to pick up these prescriptions. R. 79 (PSR at ¶ 9) (Page ID #256); *see also* R. 49 (Plea Agreement at 3) (PageID #139). All of this exceeds what we have previously found sufficient to warrant a § 3B1.1(b) enhancement. *See, e.g.*, *United States v. Munoz*, 233 F.3d 410, 416 (6th Cir. 2000) (finding manager role enhancement appropriate for defendant who "was in repeated contact with the informant and played a role in coordinating both the delivery and payment for the [drugs]."); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 596 (6th Cir. 1998) (same for defendant who gave directions to a courier as to when a drug delivery was to be made, made arrangements for a courier whose car broke down, and whose telephone number was possessed by another courier as a contact person); *United States v. Johnson*, 736 F. App'x 568, 571–72 (6th Cir. 2018) (same for defendant who supplied multi-state drug conspiracy network with pills); *United States v. Mitchell*, 295 F. App'x 799, 802 (6th Cir. 2008) ("Coordinating even a single delivery of drugs via a courier suffices to constitute management") (internal quotation marks omitted).

---

an "organizer or leader" but "not disput[ing]" that the conspiracy "involved 'five or more participants'"); R. 61 (Wolf's Sent'g Mem. at 4) (Page ID #190) (exclusively disputing the four-level leadership enhancement based on his alleged status as a leader or organizer).

Wolf argues that, to apply the managerial enhancement, the district court had to identify five or more participants that he managed. But Wolf "need not have directed every member of the conspiracy; exercising managerial control over one individual is sufficient to justify [an] enhancement" under § 3B1.1. *United States v. Robinson*, No. 22-5995, 2024 WL 4215675, at *4 (6th Cir. Sept. 17, 2024) (citing U.S.S.G. § 3B1.1 cmt. n. 2). And the record makes clear that Wolf did at least that. Wolf admitted that he "[s]ent people in the pharmacies to obtain [codeine cough syrup] with fraudulent scripts," and "paid them to go in and get it and paid them for it." R. 87 (Rearraignment Tr. at 28) (PageID #354.) As a further example, in November 2021, Rogers and Wolf drove A.B. (a runner) to a Costco pharmacy and sent her to retrieve a fraudulent prescription for codeine in the name of an individual named J.M. According to his plea agreement, "Wolf knew J.M. had not submitted the prescription and had no knowledge of it." R. 49 (Plea Agreement at 3) (PageID #139.) Police intercepted A.B. on her way back to meet Rogers and Wolf in the pharmacy's parking lot.

Nor did the district court have to find that Wolf "led, organized [or] had particular control over" anyone involved in the conspiracy. D. 21 (Appellant's Br. at 22.) "Control over subordinates" is unnecessary for a manager/supervisor enhancement, "and is one of the factors that distinguishes an organizer or leader from a manager or supervisor." *United States v. Cannon*, 552 F. App'x 512, 517 (6th Cir. 2014) (citing U.S.S.G. § 3B1.1 cmt. n. 4). Wolf's conduct constitutes management and therefore justifies an enhancement under § 3B1.1(b).

### III. CONCLUSION

Accordingly, we **AFFIRM**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because the district court failed to identify at least five participants in Wolf's conspiracy to acquire codeine fraudulently, and because it is impossible on de novo review of the record to pinpoint which runners were participants, I would vacate Wolf's sentence and remand for further factfinding and resentencing. The district court imposed a three-level managing-role enhancement pursuant to U.S. Sentencing Guidelines Manual § 3B1.1 (2023) without ever "enumerating" the participants in Wolf's conspiracy. Yet our circuit has long required district courts to "make specific findings as to the identity of the persons involved in the criminal enterprise" before imposing an enhancement pursuant to § 3B1.1. *United States v. Stubbs*, 11 F.3d 632, 641 (6th Cir. 1993). By inferring that "a number of" the runners would fail to make out coercion defenses (and thus would count as participants), the district court utterly failed to identify which—or even how many—of the runners it found to be participants. *See* R. 85 (Sent'g Hr'g Tr. at 5–9) (Page ID #302–06). Thus, any attempt to identify those runners who were repeat players (and thereby participants) amounts to "pure speculation." *Stubbs*, 11 F.3d at 641. *Stubbs*, therefore, provides sufficient reason to vacate Wolf's sentence and remand this case for further factfinding and resentencing.

The majority opinion however, bypasses *Stubbs* and applies de novo review pursuant to *United States v. Vandeberg*, 201 F.3d 805, 809 (6th Cir. 2000). *Vandeberg* is not applicable here. *Stubbs* predates *Vandeberg*, and *Vandeberg* never even mentions *Stubbs*, let alone attempts to distinguish it. *See id.* at 809–12. Because it is axiomatic that "[o]ne panel of this court may not overrule the decision of another panel," *Vandeberg* could not have abolished *Stubbs*'s factfinding requirement. *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017).

Even supposing that *Vandeberg* permits this court to apply de novo review, the record must be clear enough for this court to identify at least five participants. *Stubbs* still "require[s] the identity of the five participants involved in the criminal activity." *See United States v. Elder*, 90 F.3d 1110, 1132 (6th Cir. 1996). The confusing history of this case, which is well set out by the majority, precludes any such identification. I agree that Wolf, Rogers, and Murff were all participants. But two additional participants evade identification. At sentencing, the Government argued that "some of" the runners would fail to establish coercion defenses. R. 85 (Sent'g Hr'g Tr. at 4) (Page ID #301). From this, the district court looked at the number of fraudulent transactions that the conspiracy completed and inferred that an unquantified, unascertainable subset of the runners were repeat players, and thus, participants. *See id.* at 5–9 (Page ID #302–06). This inference does not supply the specificity that *Stubbs* requires, nor does anything else in the record. Therefore, even reviewing the record de novo, I would vacate Wolf's sentence and remand for further factfinding.

I respectfully dissent.